[Crim. No. 1146.   In Bank.—November 11, 1904.]

## THE PEOPLE, Respondent, v. SHADRICK SOWELL, Appellant.

CRIMINAL LAW—MURDER—TRIAL JURY—CHALLENGE TO PANEL—ABSENCE OF RECORD OF SUPERVISORS—EVIDENCE OF SELECTION.—Upon a trial for murder, the absence of a record of the selection of trial jurors by the board of supervisors under the order of the superior court does not warrant the court in sustaining a challenge to the panel oñ that ground, where it appears clearly from the uncontradicted evidence of members of the board and of the deputy county clerk that the identical list of jurors from which the panel to try the defendant was drawn was in fact selected by the supervisors under the order of the court, and was certified to by the board as so drawn, and was delivered by it into the possession of the county clerk.

ID.—MISTAKE IN NUMBER OF JURORS DRAWN—OMISSION OF TWO NUMBERS NOT MATERIAL—CHALLENGE PROPERLY DENIED.—Where the list of jurors drawn purports to be numbered from one to three hundred, as ordered by the court, but, by inadvertence, and evident mistake, an omission of two numbers appears in the list, such omission does not constitute such a material and substantial departure from the provisions of the law as deprived the defendant of an opportunity to secure a fair and impartial jury; and the denial of a challenge to the panel will not be disturbed for such omission where it appears that a qualified and impartial jury was selected from such panel and tried the cause.

ID.—SELECTION FROM SUPERVISOR DISTRICTS—PROPORTION TO POPULATION OF TOWNSHIPS — OMISSION — PRESUMPTION — BURDEN OF PROOF.— The fact that the jurors drawn were selected from supervisor districts is not material where it appears that they were selected in proportion to the population of townships.   The omission to select

jurors from a small township will be sustained on the presumption that the supervisors did their duty, and that there were no qualified jurors therein; and it was incumbent upon the defendant to prove that such township contained persons suitable and qualified to have been selected and returned as jurors to sustain a challenge to the panel for omission to select by townships.

ID.—SEPARATION OF LISTS.—Independent of the question whether the separation of lists required by section 206 of the Code of Civil Procedure does not apply solely to the separation of grand and trial jury lists, and not to township lists, and independent of the question whether the township selections may be tabulated from the trial jury lists, if it appears that the jurors had been selected from townships, the mere fact that they are not so listed in the certification to the county clerk is not of such substantial merit as to warrant the sustaining of a challenge to the panel on that account.

ID.—CHALLENGES FOR ACTUAL BIAS—QUALIFIED OPINIONS.—Challenges by the defendant to individual jurors for actual bias were properly denied where their opinions that the defendant had committed a crime in killing the deceased were not unqualified, and were based solely on public rumors and published statements, and were subject to removal by evidence on the trial, and where it appears to the court that the jurors would act impartially and fairly upon the evidence.

ID.—PREJUDICE AGAINST DEFENSE OF INSANITY — QUALIFICATIONS OF STATEMENT—CHALLENGES PROPERLY DENIED.—Where questions put to jurors by the defendant tended to bring out an expressed prejudice against the defense of insanity in general, which really related only to the possible interposition of simulated or feigned insanity as a defense, and the jurors upon further examination stated that they had no prejudice against real insanity proved as a defense, and that if such insanity were proven by the defendant, they would recognize and adopt it as a good and perfect defense, and would abide by and follow the instructions of the court as to the law governing the matter of insanity, the court did not err in denying challenges to such jurors.

ID.—CONTRADICTORY STATEMENTS OF JUROR—CONSTRUCTION—PROVINCE OF TRIAL COURT.—Where the evidence of a juror upon a challenge for actual bias is contradictory in itself, and subject to more than one construction, and a finding either way would have support in the evidence, the trial court is the final arbiter of the question, and its ruling will not be disturbed upon appeal.

ID.—EVIDENCE—DYING DECLARATIONS.—Where the preliminary proof showed that the declarations of the deceased as to the circumstances attending the shooting of him by the defendant were made in expectation of death, and after all hope of recovery was abandoned, his dying declarations were admissible in evidence against the defendant.

ID.—ORAL DECLARATIONS—THOUGHT OF DECEASED—RULING NOT PREJU-
DICIAL—THOUGHT OF DEFENDANT.—Where the dying declarations
were oral, and contained the statement "that he .thought the defend-
ant thought he was shot through the body," the overruling of a
motion to strike out such statement is not prejudicial error, where
it appears that the defendant, in giving his version of the shooting
after it occurred, stated that when he fired at the deceased he
thought he hit him in the side.

ID.—EXPERT TESTIMONY AS TO INSANITY.—An expert witness for the
people is competent. to give his opinion, addressed to the condition
of the testimony in the case on the part of the defendant, that it
was impossible to have all the symptoms recited in such evidence in
the same individual.

ID.—OPINION AS TO INSANITY—RULING NOT PREJUDICIAL.—Upon the
application of the expert witness to the court as to whether it was
necessary to believe all the testimony he heard as an expert, and
whether he was compelled to pass his opinion, a ruling of the court
that he might pass it upon what he deemed the truthfulness of the
testimony is not prejudicial error against the defendant, where the
witness, still speaking generally 'of the testimony for the defendant,
answered: "If all these conditions existed in the same individual, I
would believe the man was certainly insane."

APPEAL from a judgment of the Superior Court of Butte
County and from an order denying a new trial. John C.
Gray, Judge.

The facts are stated in the opinion of the court.

W. E. Duncan, Jr., for Appellant.

U. S. Webb, Attorney-General, and J. C. Daly, Deputy
Attorney-General, for Respondent.

LORIGAN, J.—The defendant was convicted of murder in
the first degree, sentenced to be imprisoned for life, and from
the judgment and order denying his motion for a new trial
appeals.

No point is made as to the sufficiency of the evidence to
sustain the verdict, but he claims that for certain alleged
errors committed during the trial the judgment should be
reversed, and these are presented as follows:—

1. He insists that the court erred in denying his challenge
to the panel of trial jurors drawn to try his case, which chal-
lenge was interposed upon the ground that there had been a

material departure from the forms prescribed by sections 204, 205, and 206 of the Code of Civil Procedure, in the selecting and listing by the board of supervisors of jurors from which said panel was drawn, and which departure is made the basis of a challenge by section 1059 of the Penal Code.

The particular grounds urged were, that there was no record of the board of supervisors disclosing that any trial jurors had been selected by such board, as ordered by the superior court, under said section 204 of the Code of Civil Procedure; that if such selection were made there were but two hundred and ninety-eight jurors listed, notwithstanding the order of the superior court required the selection of three hundred; that the jurors selected and listed were selected by the board of supervisors by supervisor districts, and not by townships and in proportion to the population therein, and that the lists of selected jurors were not kept separate and distinct from each other. (Code Civ. Proc., secs. 205, 206.)

We do not think the action of the court in denying the challenge should be disturbed. The first two objections urged— the absence of any record on the minutes of the board, and the selection of a less number than required by the order of the court—do not present such substantial departures from the provisions of the law governing the selection of jurors as deprived the defendant of an opportunity to secure a fair and impartial jury, which is the main purpose to be conserved by adherence to the requirements of the provisions of the codes cited. As far as the failure of the minutes of the board of supervisors to contain a record of the selection is concerned, it appears clearly from the uncontradicted evidence of members of the board of supervisors who made the selection, and that of the deputy county clerk, that the list of jurors from which the panel to try defendant was drawn was in fact selected by said supervisors under the order of the court, and was certified to by the said board as so drawn, and was delivered by it into the possession of the county clerk. There was no question as to the identity of the list as being the one that was selected by the board under the order, nor was there any question that it was from this list of jurors whose names were placed in the box that the panel which defendant challenged was drawn. Under this showing, that,

as a matter of fact, the jurors on the list certified and delivered to the county clerk were selected by the board of supervisors, the circumstance that an entry of such selection was omitted from the records of the board would not warrant the court in sustaining the challenge on that ground.

As to the ground of challenge that a less number of jurors were selected than were designated by the order of the court. It is not apparent from the record how the omission to return the full number required by the order occurred; it was not claimed, however, to have been intentionally done, and was doubtless inadvertent, because it appears from the certificate of the members of the board of supervisors to the list, and from their testimony on the hearing, that they intended to select and return three hundred. The list purports to be numbered from 1 to 300, but it appears that jurors whose names should have been placed opposite numbers 178 and 179 in the list, together with these numbers, were omitted. How this occurred was not explained upon the hearing; no inquiry was made by either side about it, and there is now no suggestion that this failure was prompted by any improper motive, or was the result of design. It may have occurred, and probably did, through a clerical omission in preparing the complete list for certification to the county clerk from the separate lists made out by each supervisor. It is true that this omission was a failure to follow the order of the court under the plain mandate of the statute, and while it cannot be too strongly urged that in selecting and returning jurors the provisions of the statute should be literally followed, yet the law has recognized possible departures from what is required, and to meet them has provided that not every such departure should be a successful ground of challenge, but only material ones. Material departures are only such as affect the substantial rights of a defendant in securing an impartial jury, and it is not apparent from the record before us how the fact that the supervisors returned two hundred and ninety-eight instead of three hundred jurors could have at all prevented this defendant from securing such a jury. There was no question but that the jurors who were selected were individually suitable and qualified to be returned as such, and that more than enough were returned by the board from which the defendant might select and obtain a jury, and,

in fact, out of the panel of ninety-one which he challenged such a jury was ultimately selected and tried the cause.

A point similar to the one here discussed was made in the case of *People* v. *Davis,* 73 Cal. 355, 359, and it was there held that the failure to return the full number of jurors designated by the order of the court was not such a material departure as warranted sustaining a challenge to the panel on that account.

As to the challenge on the grounds that the jurors were selected from supervisor districts, and not by townships, in proportion to the population thereof, and that the lists were not kept separate and distinct, less need be said. The testimony of the members of the board who made the selections showed that in each supervisorial district such selections were made and apportioned from the judicial townships therein, and were in general proportioned to their population, except as to Humboldt Township, which contained eighty-seven voters, and from which no jurors seem to have been selected. While it is probable that there were some persons among these voters suitable to have been returned as jurors, it is still possible that there were not. The fact that there were a given number of voters in the township is not evidence that any of them were qualified to be returned as jurors. The qualifications of jurors and of electors are quite different. A person may be qualified as an elector who would be disqualified as a juror, and it must be assumed, in the absence of all evidence to the contrary, that as the law directed the supervisors to select a proportionate number of jurors from Humboldt Township, as well as the other townships, that this was not done because there were no persons in the former who were suitable and qualified as such.

If this were not so, it was incumbent on the defendant—the presumption being that the board properly discharged its duty—to introduce evidence (which he did not) showing that there were persons in that township suitable and qualified to have been selected and returned as jurors.

As to the point that the lists were not kept separate and distinct: It is assumed by both sides in this case that the requirement of section 206 of the Code of Civil Procedure in that regard applies to the township selections; that the lists of selection from each township must be kept separate and

distinct from each other. It may well be questioned whether this requirement does not really apply to keeping the lists of grand and trial jurors, which, under the order of the court, the supervisors are required to select, separate and distinct from each other, rather than to so keeping township lists. If this were the true construction to be given to the section, as the lists of grand and trial jurors were in fact kept separate, no further mention of this point would be necessary.

On the assumption, however, made by both sides (which for present purposes only will be deemed correct), that the requirement applies to the township selections, it appears as a fact that each supervisor selected the jurors from the townships within his district, and the general lists certified to the county clerk showed such selections. Counsel for defendant in his brief has found no difficulty in tabulating from these selections and listings the jurors selected from each township, and it appears to us that no one interested in the matter would be unable to do so. But were it otherwise, and independent of the question whether the requirement does not apply exclusively to keeping grand and trial jury lists separate, we would not feel disposed to hold that where it appeared that the jurors had been selected from townships, that the mere fact that they had not been so listed in the certification to the county clerk was of such substantial merit as to warrant sustaining a challenge on that account.

2. It is next insisted that the court erred in denying defendant's challenge to some twelve jurors on the ground of actual bias. This bias was claimed to be evidenced by their statements upon their *voir dire* that they were of opinion that the defendant in killing deceased had committed a crime. But these opinions were founded solely upon public rumors or based upon statements in public journals, and were not unqualified; they were subject to removal by evidence on the trial, and it appearing to the court that, notwithstanding such opinion, the jurors would act impartially and fairly upon the evidence, the challenges were properly denied. (Pen. Code, sec. 1076; *People* v. *Brown,* 59 Cal. 354; *People* v. *Miller,* 125 Cal. 46.)

In this same line it is also urged, that the court erred in denying certain challenges of defendant to jurors whose testimony, it is insisted, showed that they entertained a prejudice

against insanity as a defense, and this was the defense alone which the defendant interposed. The examination of these jurors as to insanity as a defense was quite exhaustive, and the inquiries were as to insanity in general. Attention was not particularly directed to that insanity which alone is recognized by the law as a defense, and the existence of which relieves the defendant from responsibility. (*People* v. *Hoin*, 62 Cal. 120.[1]) And it is quite obvious that, under the inquiries which were made of the jurors concerning their views upon such a defense in general, that the prejudice which they expressed was directed to the possible interposition of simulated or feigned insanity as a defense to avoid responsibility for crime, instead of the existence of real insanity, which relieves from it, and, while it is true that their preliminary statements were that they entertained a prejudice to some extent against such a defense, it is equally clear from their testimony upon further examination, and, in fact, from their entire examination upon the point, that this prejudice did not extend to cases where proof of real insanity was made; and that in the case at bar, if such insanity were proven by the defendant, they would recognize and adopt it as a good and perfect defense, and that, as to the law governing the matter of insanity, they would abide by and follow the instructions of the court relative to it.

Under this showing we cannot say that the court erred in denying the challenges. The defendant was only entitled to a jury which would give the defense of insanity, like any other defense, full and fair consideration, and act upon it when duly proven as a valid and complete defense, and this the responses of the jury, taken as a whole, satisfied the court they would do.

But if it were not obvious from the testimony of these jurors that whatever degree of prejudice they entertained arose from the impression, popularly entertained, that insanity as a defense is often simulated and feigned, and that the prejudice of which they were speaking had no relation to real insanity, still the most that can be urged upon the record is, that the evidence given by each of these jurors on the subject was in itself contradictory, and it is well settled that, under such circumstances, it is exclusively the province of the trial

[1] 45 Am. Rep. 651.

court to determine the credit which should be given it, and that its determination in that respect is not subject to our review. As was said in *People* v. *Fredericks,* 106 Cal. 559, "In this case the examination of some of the venire, who were subsequently unsuccessfully challenged upon the ground of actual bias by the defendant, discloses a state of facts which might well have justified the trial court in excluding them from the jury-box. But the evidence of these various jurors taken upon their *voir dire* is not at all conclusive that they were disqualified from acting in the case. When the matter was submitted to the court for a decision upon the evidence taken, it can at least be said the question was an open one as to their disqualification. The evidence of each juror was contradictory in itself; it was subject to more than one construction. A finding by the court either way upon the challenge would have support in the evidence, and under such circumstances the trial court is the final arbiter of the question. For under such circumstances the question presented to this court by the appeal is one of fact, and our power to hear and determine is limited to appeals upon questions of law alone." (Also, *People* v. *Scott,* 123 Cal. 435.)

3. The point that the court erred in refusing to strike out the testimony as to the dying declaration of the deceased, on the ground that no sufficient foundation had been laid for its admission, is without merit. The point urged was, that there was no sufficient proof that it was made in the belief that every hope of life was gone. The evidence, however, fully showed that the declaration of the deceased concerning the circumstances attending the shooting was made in expectation of death, and after all hope of recovery (if ever entertained) was abandoned.

The dying declaration of the deceased was oral, and in detailing it the witness called for that purpose testified that the deceased stated to him, "that the defendant after shooting him had walked over to where he was lying and said 'You damned old cripple, I will finish you now'; that the deceased begged of him not to shoot again as he would die from the wound he had already received; that he thought the defendant thought he was shot through the body," and that defendant then left him. The defendant moved to strike out the latter portion as to what the deceased "thought the de-

fendant thought'' as to the shot, which was denied, and he
assigns this as error. Assuming that the motion should have
been granted, we do not perceive that its refusal was such
prejudicial error as would warrant a reversal upon that
ground, particularly when it appears that the defendant, in
giving his version of the shooting after it occurred, himself
stated that when he fired at the deceased he thought he had
hit him in the side.

4. The defense interposed being insanity, and evidence on
that matter having been introduced in defendant's case in
chief, in rebuttal the prosecution called one Dr. John W.
Robinson as an expert witness upon that subject. The doctor
had been present in court during several days while the wit-
nesses for the defense were giving their testimony as to the
insanity of the defendant, heard it all, and had observed the
manner and conduct of the defendant during that period.
Certain hypothetical questions purporting to be based on the
entire evidence in the case having been put to the witness,
and he having answered that there was nothing embraced in
the statement contained in the question which, in his opinion,
indicated that the defendant was insane, the prosecution then
directed his attention, particularly, to various acts and pecu-
liar conduct on the part of the defendant, claimed by the
defense to indicate insanity, and he was asked whether, in
his opinion, they did so. In answering he said (and here
arises the particular error complained of): ''It would be to
my mind impossible to have all these symptoms present in
the same man. It would indicate acute mania, melancholia,
homicidal melancholia, or suicidal melancholia, possibly all
of those, but not in the same individual. For that reason it
is necessary for me to again apply to the judge—Is it neces-
sary for me to believe all the testimony I hear as an expert—
am I compelled to pass my opinion?'' *The Court.*—''On what
you deem the truthfulness of the testimony.'' This was ob-
jected to as incompetent; the objection was overruled, and
the witness then completed his answer: ''If all these condi-
tions existed in the same individual I would believe the man
was certainly insane. As an expert I do not believe that all
these conditions can exist in the same individual.''

It is claimed by defendant that allowing the witness to
pass his opinion on ''what he deemed the truthfulness of the

testimony'' was an invasion of the province of the jury, to whom is committed exclusively the right to judge of the credibility of the witnesses.

It is quite apparent, however, that whether the rule announced by the court was right or not, the subsequent answer of the witness discloses that he did not make any application of it, or, if he did, its application was favorable to the defendant. As we understand his answer, given after the objection was interposed, nothing was said by him from which it could be inferred that the particular credibility of any witness was taken into consideration by him, nor was his answer predicated at all upon an application of the rule announced by the court. Indeed, the first part of his answer was based upon the assumption that all the facts concerning the defendant, referred to in the inquiry put to him as collated from the testimony of the witnesses for the defense, were true, and his answer thereon was favorable to the claim of the defense that the matters referred to indicated that the defendant was insane. Certainly it cannot be said that an assumption by the witness that all the matters relied on by the defendant were true and a favorable opinion announced on them could be in any manner prejudicial to him.

And the last portion of his answer, that as an expert he did not believe that all the conditions testified to could exist in the same individual, is in no respect different from what he had testified to in his answer given previous to the objection interposed,—namely, that to his mind it was impossible to have all the symptoms recited present in the same individual. There was no discrimination made as to the testimony of any particular witnesses, or as to any particular facts. His opinion was addressed to the condition of the testimony in the case on the part of the defendant, as it disclosed symptoms claimed to be indicative of the insanity of the defendant. This was certainly a matter upon which, as an expert on insanity, he was competent to give his opinion. No exception could be taken seriously if the inquiries had been directed toward ascertaining from the witness, by reason of his particular knowledge of mental diseases, what particular symptoms would be indicative of the presence of a particular phase of insanity,—whether mania, melancholia, or other phases,— and whether those symptoms which manifested the presence

of one phase would be present or absent in another. And this being true, we do not perceive upon what principle an expert in mental diseases should be precluded from giving it as his opinion upon the general manifestations relied on to support insanity, that, as a principle of medical science, they could not be all present in the same individual.

This disposes of all the points made, and there being no error in the record, the judgment and order denying a new trial are affirmed.

McFarland, J., Angellotti, J., Henshaw, J., Van Dyke, J., and Shaw, J., concurred.