THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. RAFAEL MORALES ACOSTA, Defendant and Appellant.

No. 11205. Argued March 12, 1946.—Decided May 2, 1946.

---

*Ramos Antonini & Ortiz* for appellant. *E. Campos del Toro, Attorney General, Luis Negrón Fernández, Assistant Attorney General,* and *J. Correa Suárez, Assistant Prosecuting Attorney,* for appellee.

Mr. Justice Snyder delivered the opinion of the court.

The defendant was tried twice on a charge of murder. On both occasions the jury was unable to agree on a verdict. At the third trial he was convicted by the jury of voluntary manslaughter with a recommendation of mercy. The district court sentenced him to two years in the penitentiary. He appealed from that judgment and from the order denying his motion for a new trial.

■ When the case began at 9 a.m., the defendant moved that it be postponed until 2 p.m. on the ground that the two attorneys of the defendant were physically exhausted from their efforts in other cases which had also prevented them from conferring with the defendant. As the case had already been postponed a number of times for similar reasons and as the attorneys were familiar with the evidence because of the two previous trials, the district court denied the motion, announcing that it would give the attorneys a reasonable time to confer with the defendant. We are unable to agree with the defendant that this action constituted an abuse of the discretion of the lower court.

■■ The appellant contends that the district court erred in refusing to exclude from the jury panel a prospective juror who was named by the jury commissioner of San Juan, despite the fact that the juror lived in Río Piedras. The defendant's position is that this action of the court forced him to use one of his peremptory challenges on this juror, and that as a result the number of peremptory challenges which would have otherwise been available to him was reduced to his prejudice inasmuch as he subsequently exhausted his peremptory challenges.

The defendant cites no cases in support of his position. We have found only four cases—*Ex parte Díaz, alias "Martillo"*, 7 P.R.R. 153, 174; *People v. Carbonell*, 34 P.R.R. 457; *People v. Capre*, 44 P.R.R. 108, 112–13; *People v. Pérez*, 47

P.R.R. 724, 728–29—interpreting the statute involved, § 194 of the Code of Criminal Procedure.[1] However, none of these cases is authority for the proposition that prejudicial error to the defendant flows from a mere showing without more that one man on the list of one hundred submitted by one of the jury commissioners pursuant to § 194 was not from the municipality of the commissioner, although he did live in the same judicial district.

The *Carbonell* case, which is most nearly in point, is easily distinguishable. In that case deviation from the manner provided in § 194 for the drawing of the regular panel[2] was held to be prejudicial error, warranting reversal of a judgment of conviction on the ground that (pp. 457–8) "the commissioners, following instructions from the court, proceeded about their duties in the form indicated . . . because the judge of the District Court of Mayagüez was desirous that certain jurors who had rendered unsatisfactory verdicts should be excluded from the list and from the panel of the district." But there is nothing in the record here showing that this juror was included in the jury list with the deliberate purpose of violating § 194 or that his presence on the panel was part of an effort to include or to exclude certain jurors. The defendant does not contend that the juror was otherwise disqualified. We therefore see no prejudice in the fact that he was forced to use one of his peremptory challenges to eliminate this juror. The error, if it existed, was inadvertent and harmless and does not entitle the defendant to reversal

---

[1] This Section reads as follows:

"Section 194.—The said commissioners shall then prepare a general final list of three hundred jurors for the judicial district which they shall sign and certify to, conformable to the following: Each commissioner shall prepare a provisional list of one hundred names of persons of his respective municipality, who shall be qualified to act as jurors in the judicial district, for which purpose they shall take as a basis the list of taxpayers of the said municipality, which list shall be furnished by the Treasurer of Puerto Rico. The commissioners shall then determine, as far as possible, the proportional number which corresponds to each municipality out of the three hundred jurors, taking as a basis therefor

of the judgment. See *People* v. *King,* 85 P.(2d) 928, 941 (Calif. 1938); *People* v. *Crossan,* 261 Pac. 531 (Calif. 1927); *People* v. *Sowell,* 78 Pac. 717 (Calif. 1904); 15 Cal. Jur. § 52, p. 382; Annotation, 92 A.L.R. 1109.

■ The appellant complains of the service on the jury of Herminio Oliveras and the procedure under which he was chosen. In selecting the jury, the district court followed the practice of calling twelve prospective jurors for questioning by counsel. Those who remained unchallenged after such questioning were sworn as jurors. Additional prospective jurors were then called and submitted to the same procedure until the jury was completed. The district court was not required to follow this practice. It could have postponed administration of the oath until the entire jury was selected. In fact, counsel for the defendant asked that the latter practice be followed, but the lower court refused this request.

Section 221 of the Code of Criminal Procedure provides that challenges "must be taken when the juror appears, and before he is sworn to try the cause; but the court may for cause permit it to be taken after the juror is sworn and before the jury is completed." We have held that under § 221 a peremptory challenge must be taken before the particular juror is sworn to try the case. After he has taken his oath, if the jury has not yet been completed, he may still be challenged—but only for cause. *People* v. *Torres,* 48 P.R.R.

its population pursuant to the last census of the United States; and the number so determined shall be drawn by lot by one of the commissioners, in the presence of the others, from among the one hundred names on the provisional list of the respective municipality."

 [2] The departure from the statutory procedure is described in the *Carbonell* case at p. 457 as follows: "In each judicial district of the Island the jury list from which the regular panels are drawn consists of 300 names. These 300 names are selected by commissioners proportionately from each municipality of the district according to the population of the said municipality. In the present case the commissioners selected exactly the number of persons to form the list that corresponded to each municipality but without any prior drawing."

38. And in order to prolong as long as possible the time for peremptory challenges, this court suggested in the *Torres* case that it was desirable to postpone the oaths of the jurors until all the jurors had been chosen.

But our statutes contain no mandatory provision on this question. The matter therefore rests in the discretion of the district court. And only if we found that the use of the system preferred by the district court was an abuse of its discretion, prejudicing the rights of the defendant under the facts of this particular case, would we be justified in reversing the judgment on this ground. The defendant contends that the failure to postpone the taking of the oaths of the jurors until the jury was completed seriously prejudiced his rights as it prevented him from exercising a peremptory challenge on Oliveras.

The afternoon before the trial forty prospective jurors were specially drawn for use in this case. Among them was Oliveras, who was questioned, was not challenged and was sworn as a juror under the usual practice of the district court. After eleven jurors had been selected and sworn and while the defendant still had one peremptory challenge, counsel for the defendant stated that he had just learned that Oliveras was a brother of a witness whose name appeared on the list of witnesses of the *Fiscal*. Stating that he had absolute confidence in the integrity of Oliveras, whom he knew well, counsel asked the district court for permission to question him as to whether he knew his brother was scheduled to testify and "if at any time he had discussed the facts of this case with his brother and if in spite of having been informed of them he would ratify his answer that he was in a position to act impartially in this case and if he would consider the testimony of his brother, if it were presented, as he would that of any other witness and the word of the juror would be sufficient for me."

In opposing this motion, the *Fiscal* pointed out that Oliveras' brother had been on the list of witnesses for a year; that on the *voir dire* Oliveras had been specifically asked by counsel for the defendant if he knew any reason why he ought not be a juror in this case, and that he had replied in the negative; and that he would not utilize the brother as a witness. The district court ruled that since Oliveras had been sworn, the motion must be refused.

We find no substantial prejudice to the rights of the defendant in these facts. The list of regular jurors to serve for a year is drawn up by the jury commissioners of the district. Sections 194–97, Code of Criminial Procedure, 1935 ed. Situations may arise requiring the drawing of a group of jurors to serve specially in a particular case. Sections 199, 202, Code of Criminal Procedure. The defendant does not contend that there was error in the action of the district court in drawing forty jurors from the regular panel to serve specially in this case. The list containing these forty names was in the hands of the defendant the morning of the trial. He therefore had ample opportunity to ask Oliveras whether he was a relative of Rafael Oliveras and whether he had discussed the case with the latter who the defendant had known for a long time was a prospective witness. Since Oliveras did not testify, the only relevant information which counsel for the defendant sought to elicit from him—whether he had discussed the case with his brother and if so, whether that would prevent him from acting impartially—had already been furnished to counsel when Oliveras had previously been asked whether he could serve impartially and he had replied affirmatively. And counsel for the defendant himself stated that the word of the juror was sufficient for him.

The defendant knew that under the practice of the district court he would lose his right to challenge Oliveras peremptorily unless he did so before the latter was sworn. His effort to raise the issue of a peremptory challenge of Oliveras after

he was sworn came too late. We find nothing in the circumstances of this case or the action of the lower court which abriged his rights in the exercise of his peremptory challenges.[3]

■ The defendant also argues that (1) the refusal to postpone the case until the afternoon, (2) the drawing of a special panel of forty the afternoon before the trial, (3) the fact that the defendant is from Yauco and knows few people in the judicial district of San Juan from which the panel was drawn, and (4) the refusal of the lower court to postpone the swearing of the jury until it was completed, all combined to prevent him from learning that one of the prospective jurors was the ex-brother-in-law of the *Fiscal* and the uncle of two of his children. His argument is that if he had known of this relationship in time, he would have had the opportunity to challenge the juror peremptorily or for cause. Apart from the fact that we know of no reason why the service on a jury of the brother of the divorced wife of a *Fiscal* would prejudice a defendant, we see no basis for complaint here. The information which counsel for the defendant now deems so important could have been obtained by a simple question as to whether any of the prospective jurors were or ever had been related by blood or marriage to the *Fiscal*. His failure to ask this question cannot be characterized as a prejudicial error of the district court.

---

[3] The dissenting opinion in this case asserts that the defendant should have been permitted to re-examine Oliveras in order to determine if grounds existed to challenge him *for cause*. But the record shows that the defendant made no request to re-examine Oliveras for that purpose. Both in the lower court and in this court the defendant complains only that the practice of the district court in swearing each juror individually—a practice which this court has upheld as legal—prevented him from exercising a peremptory challenge on Oliveras. Counsel for the defendant did not allege in the district court nor does he contend here that he was entitled to re-examine Oliveras, despite the fact that he had already been examined and sworn, in order that he might under § 221 exercise a challenge for cause which may be taken ''after the juror is sworn and before the jury is completed.'' See *People* v. *Torres,* 48 P.R.R. 38, 48–49: It therefore seems to us that the point on which the dissenting opinion is based is not involved in this case.

 The appellant in his brief lays great stress on his next contention: the alleged error of the lower court in denying the motion for a new trial which was based *inter alia* on newly discovered evidence. Disposition of this point requires us to examine the testimony adduced at the trial.

There were only two important witnesses for the government: Héctor Rivera and Justino Reyes. Rivera testified that as a friend of Carlos Pérez he accompanied the latter to a house where they found Gladys Morales, her brother, and her father, who is the defendant herein. The father accused Pérez of having drugged Gladys while they were out together with the result that Gladys did not know what had happened to her on that occasion. He said that Pérez would have to marry Gladys. Pérez replied he had done nothing to the girl but that if he had to marry her, he would do so. He asked only that he be given until the next day to talk to Gladys alone. The conversation between Pérez and the defendant continued while they went out on the balcony. Pérez put his right hand in his trouser pocket to "tuck in his shirt." He kept it there while he was following the defendant out on to the balcony. Pérez leaned on the balcony with his hand in his pocket, which was customary with him. The witness was not looking at the two men when he heard the shot which killed Pérez. He left to go for the police.

Reyes, a policeman, testified that he was at the police station when Rivera got there. He went immediately to the scene and found Pérez bleeding but still alive. He searched him and found no gun. He found his right hand in his trouser pocket and took it out.

The first witness for the defendant was Juan E. Adames, Insular Chief of Detectives. He testified that the defendant came to San Juan and gave him a revolver, stating that he had just killed Pérez with it because the latter had dishonored his daughter and when he had asked him to restore her honor, Pérez had offered him money. The defense then

showed that Gladys had been examined at the request of her father by a physician who certified that she had been deflowered recently.

The son of the defendant testified that Gladys, his father, and he were driving to the Río Piedras police station to leave a summons there for service on Pérez which the *Fiscal* of San Juan had issued at the request of the defendant for an investigation, when Gladys prevailed on their father to let her telephone Pérez to see if the matter could be arranged without any legal proceeding. They went to a house in Río Piedras. Pérez came to the house in response to a telephone call from Gladys. He denied that anything had happened between him and Gladys. The defendant told Pérez he would have to marry Gladys. Pérez said he wanted to talk Gladys alone but the defendant refused to permit this. Pérez then said to the defendant that if the latter would not let him talk to his daughter, he would talk to the defendant, and they went out on the balcony. After they got out on the balcony, Pérez said that "this can be arranged in some other manner." The defendant asked "In what way can it be arranged except by your marrying Gladys?" Pérez replied that "This can be arranged with money." His father then said: "You withdraw that or I'll break your neck." Then Pérez said: "No, what you are going to do is to let me pass by there." Pérez put his hand in his pocket and then the shot was fired.

In support of his motion for a new trial, the defendant filed an affidavit by Antonio La Roca that on April 15, 1941 between 6:45 and 7:15 p.m. he was walking near the scene of the killing when he heard a pistol shot. He arrived in front of a house a few seconds later, and saw a young and an older man come out of the house. The older man seemed to be carrying a gun in his hand. They got into a parked automobile. At that moment he looked toward the house and saw on the balcony another short young man leaning over

the body of a man on the floor, who had his right hand in his right trouser pocket. The young man reached into that pocket, took out a black revolver, and departed. La Roca left the scene as rapidly as possible because he was afraid that if he got involved in the case it might cost him his job with the Federal agency for which he worked. He never revealed these facts to anyone until June 7, 1944, when he wrote a letter to the defendant after his conviction. The letter, giving substantially the same account as the affidavit, was also filed with the motion.

We have held that a motion for new trial can be granted only if the new evidence (1) could not with reasonable diligence have been discovered prior to trial, (2) it is not merely cumulative, and (3) it does not impeach the testimony adduced at the trial. Section 303, Code of Criminal Procedure, 1935 ed.; *People* v. *Ruiz,* 60 P.R.R. 604; *People* v. *Salas,* 60 P.R.R. 675, 679–80; *People* v. *Ruiz,* 58 P.R.R. 641, 645; *People* v. *Ramírez,* 50 P.R.R. 224, 267; *People* v. *Quiles,* 41 P.R.R. 904, 910–11; *People* v. *Arroyo,* 28 P.R.R. 388; *The People* v. *Lebrón,* 23 P.R.R. 611, 615–16; *The People* v. *Cintrón,* 13 P.R.R. 216; *United States* v. *Johnson,* 327 U.S. 106, 90 L. ed. 389, footnote 4; 8 Calif. Jur. §§ 452–54, pp. 427–32; 4 Calif. Ten Year Supp., p. 851. We assume without discussion that these requirements were established to the satisfaction of the district court.[4]

But there are among others two additional requirements as to which a trial court must be satisfied before it is justified in granting a motion for a new trial on the ground of newly discovered evidence: (1) the new evidence must be credible, *People* v. *Quiles, supra,* pp. 910–11; *People* v. *Menéndez,* 43 P.R.R. 418; *People* v. *González,* 36 P.R.R. 781; *United States*

---

[4] As to the question of impeachment, although a strong argument could be made to the contrary, we accept *arguendo* the contention of the defendant that the ultimate purpose of the new evidence was not to impeach the testimony of the policeman.

v. *Johnson, supra;* 8 Calif. Jur. § 459, pp. 438–9; 4 Calif. Ten Year Supp., pp. 852, 857; and (2) it would probably produce a different result, *People* v. *Cabrera,* 59 P.R.R. 133, 141; *People* v. *Ramírez, supra,* p. 267; *The People* v. *Español,* 16 P.R.R. 203, 221–22; *People* v. *Romero,* 27 P.R.R. 872; *The People* v. *Blandford,* 23 P.R.R. 580, 586; *United States* v. *Johnson, supra;* 8 Calif. Jur. § 454, p. 430.

The district court may have refused the motion for a new trial on the ground that the affidavit of La Roca was not credible. Having heard all the testimony in the case, it was in a better position than this court to determine that question. We would be warranted in interfering with such a finding only if it were wholly unsupported by evidence. *United States* v. *Johnson, supra.* But there are several strong arguments which support the position that the affidavit of La Roca was not credible. We might therefore hold without more that there was no error in the order overruling the motion for a new trial.

But even assuming that the district court did not find that the affidavit of La Roca was not credible, it may have refused to order a new trial on the theory that in any event the testimony of La Roca probably would not produce a different result. On this point, the defendant argues that the verdict of voluntary manslaughter indicated the belief of the jury that the defendant had killed Pérez upon a sudden quarrel or heat of passion. Section 203, Penal Code, 1937 ed. But he contends that if La Roca had appeared at the trial and testified that Pérez actually had a gun in his pocket, the verdict would have been different—presumably, acquittal on the ground of self-defense—because the jury would have then been persuaded that Pérez had actually reached for his right pocket, as the son of the defendant testified. His theory is that this testimony would have overcome both the failure of the policeman to find a gun in the pocket of Pérez and the

suspicion which naturally rested on the testimony of the son —that Pérez reached for his pocket—as an effort to save his father.

The argument of the appellant is speculative. The testimony of the son that Pérez reached for his pocket would undoubtedly have been fortified by a showing that Pérez was armed. Yet Rivera testified emphatically that Pérez had his hand in his pocket as a matter of habit all the time he was on the balcony. And even the testimony of the defendant's son was that the killing occurred just as Pérez proposed that this matter of honor be settled with money, albeit he added that at the same time Pérez put his hand in his pocket. Moreover, Adames, another witness for the defendant, testified that the defendant in surrendering to him had told him he killed Pérez because he had offered him money when he asked Pérez to restore the honor of his daughter. The district court might therefore have concluded that whether or not Pérez was actually armed when he was killed, would probably not affect the result because it was convinced from all the evidence that the defendant shot Pérez in sudden anger or passion because of his proposition rather than in self-defense in view of an alleged gesture by Pérez in reaching for his pocket.

In the light of the foregoing consideration and bearing in mind that § 303 of the Code of Criminal Procedure provides that the district court may, not must, grant a new trial on the ground of newly discovered evidence, and that this court has said that motions for a new trial are "generally regarded with distrust and disfavor",[5] we are unable to say that the failure of the lower court to find that the affidavit of La Roca was credible and that his testimony would probably produce a different result was, under all the circumstances,

---

[5] *The People* v. *Español*, 16 P.R.R. 203, 221; *The People* v. *Lebrón*, 23 P.R.R. 611, 616.

a clear abuse of discretion [6] requiring us to reverse the order of the district court and to grant a new trial.

Although the defendant also appealed from the judgment sentencing him to one month in jail for carrying a prohibited weapon, there is no assignment of error in his brief as to this judgment.

The judgments sentencing the defendant and the order denying a new trial will be affirmed.

### DISSENTING OPINION OF MR. JUSTICE TODD, JR., IN WHICH MR. CHIEF JUSTICE TRAVIESO CONCURS.

In my opinion the lower court abused its discretion and committed prejudicial error in not permitting the juror Oliveras to be questioned despite the fact that his brother did not testify as a witness at the trial. We do not know whether this witness testified in the two former trials, but it should be presumed that his brother knew of his intervention in the case. If the court had permitted the questioning of juror Oliveras, the defendant could have learned with certainty what was the real situation and, if proper, he could have challenged him for cause upon being denied the peremptory challenge. It does not necessarily appear from defendant's motion that it was his purpose to challenge juror Oliveras peremptorily. The lower court did not permit the examination under the mistaken theory that since the jury had already been sworn the motion had to be refused. Precisely, defendant should have been permitted to examine him in

---

[6] 8 Calif. Jur. § 463, pp. 442–3, states the doctrine as follows: "A motion for new trial is addressed to the sound legal discretion of the trial court, and its action will not be disturbed upon appeal except in an instance manifesting a clear and unmistakable abuse of such discretion. This rule is peculiarly applicable to an application based upon the ground of newly discovered evidence, as to which an enlarged discretion is committed to the trial court, because of the disfavor with which such applications have always been regarded. This discretion is to be exercised in determining the diligence shown, the truth of the matters stated, and the materiality and probability of the effect of them if believed to be true. The question as to whether the evidence produced on the motion is such as to render a different result probable is one peculiarly addressed to the discretion of the trial judge."

order to determine if grounds existed to challenge him for cause. *People* v. *Torres,* 48 P.R.R. 38.

Conceding that the lower court had discretion to adopt the practice which it followed to constitute the jury, notwithstanding our recommendation to the contrary in *People* v. *Torres, supra,* I believe that with more reason it should have given the defendant every reasonable opportunity to examine juror Oliveras, before evidence was presented, even though he had been sworn definitely.

Mainly on this ground I dissent since it is my opinion that the judgment should be reversed and a new trial granted.