THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. RAMÓN BELTRÁN GÓMEZ, Defendant and Appellant.

No. 15186. Argued May 6, 1952.—Decided May 29, 1952.

468

*César Andréu Ribas* for appellant. *Víctor Gutiérrez Franqui, Attorney General, J. Rivera Barreras, Fiscal of the Supreme Court,* and *Frank Vizcarrondo Vivas, Assistant Fiscal,* for appellee.

MR. JUSTICE MARRERO delivered the opinion of the Court.

Accused, convicted and sentenced for the crime of rape,[1] Ramón Beltrán Gómez appealed and in support of his appeal

---

[1] Beltrán Gómez was charged in the information with a subsequent offense of rape because, it was claimed, he had·been previously sentenced for the crime of murder in the second degree to 20 years in the peniten-

he assigns nine errors on which, in his opinion, the judgment should be reversed.

 The first assignment is that the lower court erred in disallowing his challenge to the general jury panel, as well as in permitting the jury to be selected from a list which did not include the 24 names of the regular panel from which 12 names shall be drawn and selected pursuant to law. In his discussion of this assignment the appellant contends, moreover, that the names of a large percentage of jurors who had served as such the previous year, were needlessly repeated, and that contrary to law the commissioners of Río Piedras and San Juan delivered to the Clerk lists containing the names of 66 and 163 persons, respectively. It appears from the record that at the beginning of the trial and before the trial jurors were in attendance the defendant challenged the general jury panel for the reasons given. That was, of course, the proper time to make such an objection. Section 213, Code of Criminal Procedure.[2] The court disallowed the challenge. It acted correctly.[3] Although pursuant to § 194 of that Code "Each commissioner shall prepare a provisional list of one hundred names of persons of his respective municipality, who shall be qualified to act as jurors in the judicial district"[4] such statutory provision is

tiary. Upon being convicted in the case of rape as alleged, the district court sentenced him to imprisonment in the penitentiary for 10 to 35 years. However, since the judgment rendered in the murder case was subsequently vacated, said court, after dismissing a motion for new trial, once again entered judgment in the case of rape and sentenced him to a prison term of 1 to 10 years in the penitentiary.

[2] Section 213 of the Code of Criminal Procedure provides:

"A challenge to the panel must be taken before a juror is sworn and may be in writing or be noted by the clerk, and must plainly and distinctly state the facts constituting the ground of challenge."

[3] Section 212 of the Code of Criminal Procedure recites:

"A challenge to the panel can be founded only on a *material* departure from the forms prescribed in respect to the drawing and return of the jury or on the intentional omission to summon one or more of the jurors drawn." (Italics ours.)

[4] Section 194 of the Code of Criminal Procedure provides:

"The said commissioners shall then prepare a general final list of three hundred jurors for the judicial district which they shall sign and

directory rather than mandatory. Section 461 of the Code of Criminal Procedure.[5] *People* v. *Morales*, 66 P.R.R. 9; *People* v. *Lanausse*, 30 P.R.R. 679, 682; *People* v. *Juliá*, 25 P.R.R. 238, 240; *The People* v. *Pillot*, 20 P.R.R. 353, 355; 92 A.L.R. 1110; 15 Cal. Jur., p. 412, § 84; *People* v. *Davis*, 73 Cal. 355, 15 P. 8; *People* v. *Sowell*, 145 Cal. 292, 78 P. 717; *People* v. *Danford*, 112 P. 474; *People* v. *Durrant*, 48 P. 75; *People* v. *Richards*, 82 P. 691; *Wadsworth* v. *State*, 130 P. 808. Laws must be sensibly construed. Section 194, *supra*, was amended in 1918 to read as quoted. It has not been modified ever since. Nevertheless, the population of some of our towns and cities has so changed that it is sometimes impossible to comply strictly with the provisions of said Section insofar as the latter provides that "The commissioners shall then determine, as far as possible, the proportional number which corresponds to each municipality out of the three hundred jurors, taking as a basis therefor its population pursuant to the last census of the United States." We can take judicial notice of the fact that given the present population of the capital, compared with the total number of inhabitants within the San Juan district of the judicial district of Puerto Rico, the proportional number of jurors which corresponds to that municipality ex-

certify to, conformable to the following: Each commissioner shall prepare a provisional list of one hundred names of persons of his respective municipality, who shall be qualified to act as jurors in the judicial district, for which purpose they shall take as a basis the list of taxpayers of the said municipality, which list shall be furnished by the Treasurer of Puerto Rico. The commissioners shall then determine, as far as possible, the proportional number which corresponds to each municipality out of the three hundred jurors, taking as a basis therefor its population pursuant to the last census of the United States; and the number so determined shall be drawn by lot by one of the commissioners, in the presence of the others, from among the one hundred names on the provisional list of the respective municipality."

[5] Section 461, *supra*, recites:

"Neither a departure from the form or mode prescribed by this Code in respect to any pleading or proceeding, nor an error or mistake therein, renders it invalid, unless it has actually prejudiced the defendant, or tended to his prejudice, in respect to a substantial right."

ceeds 100. Hence, the letter of the statute cannot be followed blindly. Laws do not contemplate impossible things, but whenever possible, the statute must be strictly complied with as regards the organization and impanelling of the jury. What is intended in this connection is that the defendant be tried by an impartial jury composed of competent citizens of his district. It was not proved that the irregularity in question impaired defendant's substantial rights.

■ On the other hand, pursuant to § 199 of that same Code, the district court, whenever required by its criminal business, may make an order directing that a trial jury, "which shall not exceed twenty-four," be drawn. In the case at bar the general panel summoned consisted of 24 jurors and the fact that only 21 appeared constitutes no error. *The People* v. *Vázquez*, 20 P.R.R. 338, 342; *The People* v. *Morales, alias Yare Yare*, 14 P.R.R. 227, 231; *The People* v. *Acosta*, 11 P.R.R. 240.

■■ Upon being called to testify, the clerk of the court declared that 21 of the jurors of the 1950–51 general panel had served as such the preceding year. In this connection § 197 of the aforesaid Code provides "That in framing a new list *no name* of a regular juror for the preceding year *shall be repeated, as far as possible*, unless the list of qualified taxpayers for the district shall have been exhausted." (Italics ours.) This is another directory provision of the Act, the violation of which is not fatal unless it is shown that such departure was deliberate and intended to prejudice the defendant, or fraudulent. *People* v. *Carbonell*, 34 P.R.R. 457. There is no such evidence herein.

■ Likewise, in connection with the error thus assigned, the fact that one of the jurors appeared as being from the town of Río Grande when he had actually resided in Río Piedras for the last three years, is no ground either to challenge the panel.

■ In his opening statements to the jury, the district

attorney manifested that he intended to prove that in the afternoon of September 15, 1949, the prosecutrix Áurea Esther Ruiz, also known as Áurea Esther Reyes, and her friend Carmen Rodríguez, of her own age more or less, went to visit Petra Eneida Sánchez, defendant's wife, and upon arriving at La Marina, in San Juan, where the latter lived, they knocked at the door and the defendant came and opened it; that Beltrán told them that Eneida was reading in her room, and that they could go in; that it was not true that Eneida was there; that the girls went inside and the defendant closed the door, as well as a window, and forthwith grabbed Esther by the arms who was then 14 years and odd months old; threw her on the bed where he used to lie down to have intercourse with his wife, and making use of force and violence had sexual intercourse with her in the presence of the other; and that the defendant then got up from the bed, went towards the other girl, kissed her, touched her breasts and rubbed his male organ against the girl's skirt. He further stated "that the two girls asked him to let them go but he refused and that before leaving said house the defendant took from his pocket 85 cents and gave them to Esther, the 14-year old girl and with whom he had sexual intercourse, and 50 cents to the other young girl who with her own eyes had witnessed the entire chain of events I have just described to you. If the prosecution succeeds in proving these facts, that this man, in the manner I have just pointed out, committed that crime with a 14-year old girl and that he had no misgivings in committing said offense in the presence of the other minor, and that not content with that, he kissed, caressed and roused the sexual desires of that other minor, then, gentlemen of the jury, the prosecution must ask you to find this defendant guilty of the offense of rape."

When the district attorney finished expounding his theory to the jury the defense asked the court to instruct the jury to the effect that the defendant was not there to

answer for any other crime except that of rape committed on the person of Áurea Esther. The court answered that it did not consider such an instruction necessary at that time. The trial went on and even though during the course thereof the evidence tended to show that after having sexual intercourse with Áurea Esther, the defendant had performed with the minor Carmen Rodríguez the acts mentioned by the prosecution, however, it was clear that the defendant was being tried for the offense of rape allegedly committed on the person of Áurea Esther and not for any other. In his opening statements the district attorney could refer to any fact which according to the rules of evidence was inseparable from the fact with which the defendant was charged. *People* v. *Pierantoni*, 60 P.R.R. 13; *People* v. *Juarbe*, 37 P.R.R. 433.

On the other hand, the defense itself cross-examined the minor Carmen Rodríguez at length, not only in connection with what she said the defendant had done to Áurea Esther, but also in connection with what that witness alleged that the defendant had done to her. The defense thereby waived its right to request that such question be withheld from the jury. *People* v. *Castro*, 72 P.R.R. 92.

At the request of the district attorney, the birth certificate of the alleged victim was admitted in evidence. This is assigned as an error, it being alleged that it was not a prosecution for statutory rape in which the age of the prosecutrix is essential. We agree that this was a prosecution for the crime of rape without further specification in connection with which the age of the injured woman lacks any relevancy. Nevertheless, when offering said certificate the district attorney stated that he was not offering it to prove the age, and later the court itself, in its instructions to the jury, indicated that an arithmetical operation demonstrated that when the acts with which the defendant was charged took place, the prosecutrix was 14 and a half years old and that "this case does not involve the question of age

which is one of the elements necessary for the commission of rape, when it is on the person of a girl less than 14 years old . . . the age has no bearing in this case except to determine any other question regarding the manner in which resistance was offered, but never to determine that the defendant is bound to answer for the crime of having sexual intercourse with a girl of that age, because the age has nothing at all to do with this." Under the circumstances, we fail to see how the fact that the aforesaid birth certificate was admitted in evidence, or the fact that upon admitting it the court expressed itself as it did, could prejudice the defendant.

■ Upon closing his instructions to the jury, the judge stated that he was delivering to them "a copy of the information, which because of special attendant circumstances I am going to show to my colleague so that he may compare it with the information, in order to find out whether it is correct eliminating a certain allegation which is not before you now." The allegation to which the judge referred was undoubtedly that of a subsequent offense, inasmuch as it was alleged in the information that the defendant "was sentenced by the Hon. District Court of San Juan, on 8–25–35 for the crime of Murder in the Second Degree to 20 years' imprisonment in the penitentiary, which judgment is final and unappealable, since it has neither been reversed, vacated nor set aside and which sentence the aforesaid Ramón Beltrán Gómez served in the Insular Penitentiary of Puerto Rico." When a previous conviction is charged in an information or when a subsequent offense is alleged and the case is tried by the jury, the latter is bound to state in its verdict whether it finds the defendant guilty or not guilty of the offense with which he is charged, as a second or subsequent offender. Section 285, Code of Criminal Procedure;[6] *People*

---

[6] Section 285, *supra*, recites:

"Whenever the fact if (of) a previous conviction of another offense is charged in an information, the jury, if they find a verdict of guilty

v. *Cancio*, 53 P.R.R. 520; *People* v. *Almodóvar*, 61 P.R.R. 662. But as in the instant case the defendant had admitted the allegation of a subsequent offense it was not necessary to submit that question to the jury. Consequently, since the jury did not have to pass on that question, upon the judge delivering to them a copy of the information the proper thing was to strike therefrom the allegation referring to the previous offense, inasmuch as otherwise it might have been confusing to the jury.

We have read the transcript of the evidence and we think that the imputation of passion, prejudice and partiality finds no support in the record.

■ The granting of an inspection rests entirely in the sound discretion of the trial judge. *People* v. *Cruz*, 60 P.R.R. 112, 118; *People* v. *Coto*, 48 P.R.R. 143, 148; *People* v. *Sarria*, 57 P.R.R. 865.

■ As already stated, the defendant was convicted of the offense charged and, in accordance with the information originally filed against him, which alleged a subsequent offense of rape, the court sentenced him to imprisonment in the penitentiary for 10 to 35 years. Subsequently and by virtue of a writ of habeas corpus the judgment in the case of murder in the second degree on which the subsequent offense of rape was based, was vacated. Thereupon, the defendant moved for a new trial. He alleged in his motion, among other things, "that after the trial, and through Áurea Esther Ruiz herself, the defendant learned that said young girl, contrary to her testimony during the trial, is not deflowered, nor was she examined by Dr. Arsenio Comas, but by a subordinate nurse of said physician, and that the testimony of the alleged victim was due to the urging of the then

of the offense with which he is charged, must also, unless the answer of the defendant admits the charge, find whether or not he has suffered such previous conviction. The verdict of the jury upon a charge of previous conviction may be: 'We find the charge of previous conviction true' or, 'We find the charge of previous conviction not true,' as they find that the defendant has or has not suffered such conviction."

wife of the defendant, called Petra Eneida Sánchez, and the latter's mother; and that Áurea Esther Ruiz appeared before several doctors in medicine, two specialists among them, and after being examined she was found to be a virgin, that is, her hymen was not ruptured, showing no sign of defloration, and that said examinations were performed a few days after the trial wherein the defendant was convicted." The motion for new trial was based on subdivision 7 of § 303 of the Code of Criminal Procedure.[7]

A motion for new trial can be granted only if the newly discovered evidence is not cumulative, does not impeach the testimony adduced at the trial and could not with reasonable diligence have been discovered prior to the trial. *People v. Ortiz*, 68 P.R.R. 632; *People v. Morales*, 66 P.R.R. 9, 19; *People v. Quiles*, 41 P.R.R. 904, 910; *The People v. Otero*, 11 P.R.R. 330; *The People v. Milán*, 7 P.R.R. 442; *People v. Soto, alias Pantaleón*, 26 P.R.R. 399; *cf.* § 257 of the Penal Code.[8] The record shows, however, that such was not the situation in this case, inasmuch as both the defendant and his attorney were fully aware of that evidence prior to the trial. Furthermore, the evidence offered in support of the motion for new trial only tended to impeach the evidence

---

[7] Section 303 of the Code of Criminal Procedure provides:

"When a verdict has been rendered against the defendant, the court may, upon his application, grant a new trial, in the following cases only:

". . . . . . . .

"7. When new evidence is discovered material to the defendant, and which he could not, with reasonable diligence, have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly, discovered evidence, the defendant must produce at the hearing in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as, under all the circumstances of the case, may seem reasonable."

[8] Section 257, *supra*:

"The essential guilt of rape consists, in the outrage to the person and feelings of the female. Any sexual penetration, however slight, is sufficient to complete the crime."

adduced at the trial. Hence, the lower court did not err in overruling said motion.

 Finally, the record contains sufficient evidence warranting the verdict returned by the jury and showing that said verdict was not contrary to the evidence nor to law. *People* v. *Cabrera*, 59 P.R.R. 133.

The judgment appealed from will be affirmed.