## FRANK v. UNITED STATES.
### No. 6691.

Circuit Court of Appeals, Ninth Circuit.
June 24, 1932.

Thomas R. Lyons and Ira D. Orton, both of Seattle, Wash., and O. D. Cochran and Hugh O'Neill, both of Nome, Alaska, for appellant.

George J. Hatfield, U. S. Atty., and I. M. Peckham, Asst. U. S. Atty., both of San Francisco, Cal.

Before WILBUR and SAWTELLE, Circuit Judges, and ST. SURE, District Judge.

ST. SURE, District Judge.

Appellant has been twice tried and found guilty of murder. At the first trial he was convicted of murder in the first degree without capital punishment, and was sentenced to life imprisonment. Upon appeal to this court, the judgment was reversed and a new trial granted. Frank v. United States, 42 F.(2d) 623. At the second trial, appellant was found guilty of murder in the second degree, and was sentenced to a term of forty-five years. Appeal is taken from this judgment.

Appellant admits that he shot and killed a human being, but claims that the homicide was necessary in self-defense. The facts as shown by the record are similar to those stated in the opinion of this court in Frank v. United States, supra.

The questions involved in this appeal are: First, errors assigned upon rulings of the lower court in impaneling the jury; second, errors assigned upon instructions given and refused.

The first assignment of error is as to the ruling of the trial court relative to the size of the jury box used at the trial. Appellant objected to the box in which the names of the prospective trial jurors were to be placed, upon the ground that the box was not of the size required by the laws of the Territory of Alaska, in that it was not at least 10 inches each way, inside measurement. By direction of the trial court, the box used was measured by the clerk and was found to be 5¾ inches by 8½ inches by 8¼ inches in size, inside measurement.

■■ There may be room for debate, as seen by the arguments in briefs of respective counsel, whether the law "regulating the method of choosing jurors in the Courts of the Territory of Alaska" (chapter 100 of the Session Laws of 1931) makes provision for the size of the "trial jury box." But if the statute was not followed in this particular, it was a harmless irregularity. It is not shown that appellant's substantial rights were prejudiced thereby. Hauptman v. United States (C. C. A.) 43 F.(2d) 86, 89; People v. Sowell, 145 Cal. 292, 78 P. 717; 28 USCA § 391. Section 10 of the Act, which provides that departure from its provisions shall be reversible error, is not binding upon this court. Hauptman v. United States, supra.

The trial court disallowed challenges for actual bias interposed to three jurors. The Alaska Code of Criminal Procedure (sections 125, 127) provides:

That a challenge for actual bias may be taken "for the existence of a state of mind on the part of a juror in reference to the action or to either party which satisfies the trier, in the exercise of a sound discretion, that he can not try the issue impartially and without prejudice to the substantial rights of the party challenging."

"But on the trial of such challenge, although it should appear that the juror challenged has formed or expressed an opinion upon the merits of the cause from what he may have heard or read, such opinion shall not of itself be sufficient to sustain the challenge, but the court must be satisfied, from all the circumstances, that the juror can not disregard such opinion and try the issue impartially."

Nome, the scene of the two trials, is a small town. The homicide was matter of common gossip in the community. The proceedings show that the trial judge, instead of personally conducting the examination of prospective jurors on their voir dire, permit-

ted respective counsel to do so. The utmost latitude was allowed both sides, and, as a result, counsel shuttlecocked with the "state of mind" of the jurors. Questions were propounded that usually suggested the answers given. While it was a matter of common knowledge that appellant had shot and killed a human being, and counsel knew that appellant's sole defense was that the killing was justified in self-defense, the record fails to disclose that jurors, on their voir dire, were advised of this fact. The significance of this is shown when it appears that the jurors, knowing that a murder had been committed, but being unfamiliar with the technicalities of the law and court procedure, and not being advised of the issue of self-defense, endeavored to disclose their "state of mind" under a specious examination principally composed of leading questions.

The entire examination of the jurors challenged follows in narrative form.

Juror Corrigan, questioned by the United States attorney, said: "I believe in capital punishment. I do not have such conscientious opinion as would preclude me from finding defendant guilty were the punishment death. I was not in Nome during the winter of 1928; I was out in the hills. I was in Nome during the summer of 1929. I was not present in court during the former trial. I heard about the case, just hear rumors. I couldn't form an opinion, I only know just what I heard. I am not in a position to say defendant is or is not guilty. I couldn't step into the jury room right now and vote. I have no opinion as to guilt or innocence of defendant. I know of no reason why I would not be a fair and impartial juror, fair to government and defendant and render my verdict in accordance with the evidence and the instructions of the court."

Questioned by defense, he said: "I was at Iron Creek, in the winter of 1928-29. I had occasional visitors that winter. I heard about this affair a couple of months after. I know the defendant. I didn't know Sparrow in his lifetime. I saw about this case in the paper. At the time I formed an opinion when I heard it. I had an opinion at that time. I don't know whether the purported facts of this case were common knowledge at the time. I first heard about this matter from Duffy O'Connor when he was packing mail. I talked to one of the boys stopping with me, not Alexander, a young fellow from Seattle, now gone outside. From then on, I heard it discussed quite frequently, from a great many people, a great many times. It

was a common topic. I couldn't believe some of what I heard. I heard no contradictory reports. I partly believed the essential facts of the affair. I just heard how the affair occurred, that's all. At that time, I had no opinion that defendant was guilty of crime. I didn't know the particulars of it. Some of what I heard I accepted as facts. I don't accept everything I hear. I had my doubts about some of the facts stated to me. I kind of thought some of them all right. Those facts I thought all right I accepted as the truth. Those I didn't, I didn't. I believe a man was killed. I couldn't prove the defendant guilty—I only just heard it. I believed it at the time. There was nothing to contradict it in my mind at that time. I still believe it and nothing has occurred to change my mind. I believe defendant guilty of the crime charged based on what I heard about the time it occurred. It would take considerable evidence to remove that opinion. As to whether I could be fair to defendant, I would have to hear from someone else who would change my mind from what I think now. I would have to hear some more evidence. From what I heard, I couldn't change my mind without hearing evidence. I now believe him guilty and to change my mind would require evidence. I couldn't change my mind until I heard evidence."

Questioned by the United States attorney, he said: "I would lay my opinion or belief aside and entirely disregard it. I don't know whether I would require the Government to prove every essential fact before I would return a verdict of guilty. I guess I could disregard my opinion, and lay my opinion or belief aside. I suppose I can try this case as though I never heard it before. I will give the defendant the presumption of innocence until something else proved he was guilty. I can try the case on the evidence that I hear in this case."

Questioned by defense, he said: "I can lay aside my opinion, if I heard evidence. But I would have to have evidence."

Questioned by the court, he said: "I didn't pay much attention to the case in any way. I have not heard the facts of the case from anyone who knew the facts. I think I could try the case and require the government to prove every essential fact in the indictment. What I heard would not influence my mind any if I heard something else that would change my opinion. My opinion now is not a fixed opinion. When I hear the evidence, I would lay my opinion aside entirely so that I would determine my verdict on the evidence in this case."

Juror Laasen, questioned by the United States attorney, said: "I believe in capital punishment. I was in Nome the winter of '28-'29 when Joseph Sparrow was killed. I heard it discussed. I do not think the discussion was based on facts, merely hearsay. I did not form a fixed opinion respecting the guilt or innocence of defendant. I can abandon and disregard my opinion and try the case as it is unfolded. I could be fair to government and defendant and render my verdict in accordance with the evidence and the instructions of the court."

Questioned by defense, he said: "I am fixing up a boat for myself. I was in Nome the winter of '28-'29. In the summer of '29 I was in Golovin. I was not in Nome when this case was tried. I remember when this affair occurred. I was in Nome then. It was practically the sole subject of conversation. I heard it discussed everywhere I went. Many times after it occurred. From various people. I might have talked of it myself with other people. At that time I believed the general facts as I heard them. I had an opinion at that time. I couldn't say a very strong opinion. I don't know that I expressed my opinion in any discussion. I heard a great many people talk about it everywhere I went it was discussed. I joined in those discussions a little, not much. I might have discussed it all over. I had some opinion at that time. I might have expressed an opinion, and I couldn't say my opinion was strong, it went to the guilt or innocence of defendant. Nothing occurred since to change that opinion. If chosen as a juror, I might change my opinion according to evidence. I don't know whether I would carry the same opinion into the jury box. I would have to have something to change it. It would have to be evidence. If I entered the jury box I would have to have evidence to change my opinion. If no evidence were produced I would still have that opinion. I couldn't help it. I would try to lay it aside, but I would have to have evidence before I could change, I don't know how much, but it would have to be sufficient on behalf of defendant to change it. The general facts of this case were discussed by everybody. I remember the coroner's jury being called, I heard of the evidence given at the inquest. I was not present there. I heard of it. I can't say that that formed or confirmed my opinion. The defendant would have to pro-

duce evidence before I could change the opinion I hold. If he produced none, I would still have that opinion, as to the guilt or innocence of defendant. I could not without evidence presume him innocent. Before I could, I would have to have evidence before I could change my mind."

Questioned by the United States attorney, he said: "I have no fixed opinion. I feel I could lay my opinion aside and decide this case fairly to government and to defendant and render my verdict in accordance with the evidence. I can and will do that. Notwithstanding my opinion or impression I can and will render a fair and impartial verdict in this case. I know of no reason why I could not be a fair and impartial juror, fair to government and to defendant, laying aside any impression I might have. The opinion or impression I hold is not based on facts, all hearsay. I know nothing about them being true or false. I will abandon them in this case."

Questioned by defense, he said: "I will have to have evidence from defendant before I can change. I cannot presume him innocent until I hear evidence. He's got to produce evidence. I can enter on the trial of this case when I am sworn as a juror, before any evidence was produced, and presume the defendant innocent."

Questioned by the United States attorney, he said: "Notwithstanding my opinion I could render an impartial verdict. I can and will abandon my opinion and will try the case as though I never heard it before. And take the evidence as produced on the witness stand and the instructions of the court."

Questioned by the court, he said: "I can enter on the trial of the case and require the government to prove him guilty beyond a reasonable doubt before finding a verdict of guilty."

Questioned by defense, he said: "Yet the fact remains that I would have to have evidence from the defendant before I could presume him innocent."

Questioned by the United States attorney, he said: "That will yield to evidence."

Juror Oliver, questioned by the United States attorney, said:

"I believe in capital punishment. I probably was in Nome in January, 1929. I don't remember the exact time I came. I think I came the first part of '29. I heard about the case. I was over here in Nome. I heard a great deal of discussion about it by people, some of whom, I presume, knew the facts of the case. I know Marie Weiss, now Marie Felder. I didn't know her at the time. I never heard her discuss the case. I never heard Dr. O'Hara or Hugh O'Neill discuss it. Cliff Allyn may have said something about it. Frankly, I don't recall at this time if he did. I don't know Mr. Harrison and never discussed the case with him. I know J. C. Kennedy. I heard quite a little from him. I never discussed it with Geo. Bagley, or Chas. D. Jones, the marshal, nor Mae Johnson, nor Emil Laurin, nor Hector Laurin. J. C. Kennedy was the only one, and possibly Cliff Allyn. I didn't discuss it with anyone else particularly. I got my information from sources available. I don't think they had any personal knowledge. Otherwise it was hearsay. I would form some impression from what I heard, if what was passed along as facts, I have no way of forming an idea as to their being facts. I have an opinion at this time respecting the guilt or innocence of defendant. If the evidence goes to disprove what is previously my belief in the matter, I can render an impartial verdict in the case, notwithstanding my opinion.

"Q. Are you in a position now to determine the guilt or innocence of defendant? A. On what I have heard?

"Q. Could you go to the jury room and render a verdict before evidence is heard on oath? A. I believe I would want evidence. Certainly I would want evidence, evidence from the witness stand and instructions from the court. I haven't a set opinion—I merely formed my opinion from what I heard. If called I could lay that aside and determine guilt or innocence on the evidence here at this time."

Questioned by defense, he said:

"I can't say when I came over to Nome. It was either December, '28, or January, '29. I heard from various people at various places what purported to be the facts. I asked questions of those I thought might know of the circumstances. I accepted the opinion and knowledge of those who gave them without comment. I imagine I may have talked to Cliff Allyn, who was a witness, at some other time or other but I don't remember it. I talked to Charlie Kennedy. I recollect that distinctly. From my conversations and my questions, and the facts as I heard them, I formed an opinion. I believed those facts at the time. I still have no reason to doubt the good faith of the persons who gave them. That opinion is fairly well fixed. I try to be conservative in reaching conclusions. When I do form an opinion, it is usually based on

pretty strong evidence, and that is true in this case. Based on evidence I heard, if you would call it evidence or information, I formed that opinion. But you must remember, at the time I asked questions, that there were quite a number of conflicting stories—I heard different sides. From all that I made up my opinion, and that impression is still in my mind at this time.

"Q. It is not humanly possible to lay that aside? A. Well, if the evidence submitted in the case. You mean to empty my mind of all I heard and proceed with an open mind? Well, I couldn't erase it all from my memory, that couldn't be done. On hearsay or statements I presumed were hearsay I formed this opinion and I still have that opinion. I have had no further light on the subject. I presume I would enter on the trial of the case with that opinion. I certainly would. I don't believe that I would be more apt to give credence to testimony that would fortify my belief. There would have to be some evidence to change my opinion, sufficient to overcome it. I think, looking at it from my point of view, I don't want to serve, but I could accept the evidence given on both sides and decide aside from any previous opinion I may have formed. I cannot say that possibly that previous opinion may prejudice my mind. I think I am fair minded. It might and it might not affect you at all. This is persisting in my mind for some time and up to today I have seen no reason to change my opinion, but after being called as a juror. If called as a juror, I would try my best to be fair, just as far as I could. I have my doubts. I don't know if it would be proper for me to sit in this case. I have expressed my opinion several times on this case. Nothing has occurred to change that so far. I have had no chance to have any other information. It is a pretty hard question to ask, whether I could be a fair juror. I could sift the evidence, hear the case, balance it all after getting other information. Whether that original opinion would work for or against defendant is a question in my mind. I cannot say how much it would influence me. I have never served on a case of this sort before and I don't know that changes might take place. If I were the defendant, I would not be willing to have my case tried by twelve men of my 'conviction'."

Questioned by the United States attorney, he said: "If I were on trial, I would like a juror who could acquit me irrespective of the evidence. I expect I would feel safer if I knew they would acquit me in advance. At this time I think I could be fair to defendant and fair to the government. I could notwithstanding my opinion render an impartial verdict based on the evidence produced at this trial. I would accept that given under oath, on the stand here as testimony and render a verdict accordingly."

Questioned by defense, he said: "I cannot say how much I might be influenced by my previous opinion. If the evidence were conflicting I couldn't say. I can't say it would have influence. It will have more or less where you have an opinion that might require something to change it. I have already said I could take the evidence. I'm afraid I wouldn't be willing to be tried by a jury of my present frame of mind."

Questioned by the court, he said:

"The court will charge you in this case that the defendant is presumed to be innocent; that that presumption of innocence is present with you when you enter the jury box before you hear any evidence and this presumption of innocence remains with you until overcome by some proof to the contrary; can you enter the jury box with that presumption of innocence? Can you presume him innocent? A. Well, as I said before, for me to say that I can do that or cannot do it, is saying something that I am not absolutely certain of myself; I don't know if I could rid my mind and start out entirely clear without prejudice. I cannot say. I think so, but I am not prepared to make a definite statement. Just how far anybody can rid their mind of an idea resident there, I don't know. I have not heard what purports to be evidence in this case. I haven't heard anything submitted as evidence. All I have heard has been statements from persons who are supposed to know what they are talking about in the courtroom during the trial and outside.

"Q. Would the facts that you heard not under oath have any influence with you after you heard the real facts under oath in the jury box and before the jury; would what you heard before influence you in determining whether or not you believed the evidence? A. Well, if from some I heard, I suppose it might; I probably would remember what they said. It is hard to rid your mind of an impression formed.

"Q. Would you take an impression formed as against the testimony of witnesses? A. I would give credence to a witness and let that precede everything else. I think I could be fair."

Appellant contends that "no one of the

three prospective jurors, Corrigan, Laasen, or Oliver, was a fair and impartial juror," under the facts and the law, citing Williams v. United States (C. C. A.) 93 F. 396; Dolan v. United States (C. C. A.) 123 F. 52, 55; and Rosencranz v. United States (C. C. A.) 155 F. 38. These cases were decided by this court upon appeals from the District Court of Alaska, and in each was involved the application of the law to facts and circumstances similar to those presented by the record before us.

In the Williams Case, the juror challenged had discussed the case with a former attorney for the defendant with whom he was intimately acquainted, and became prejudiced against defendant. Although he said he did not have a fixed opinion as to defendant's guilt, he stated that his mind was "strongly colored" in the matter, and that his prejudice was so strong that it would require evidence to remove it. This court held that it was error to disallow the challenge.

In the Dolan Case, supra, the juror had formed an opinion based upon conversations overheard of persons who had been witnesses in the case at a former trial. It was held that the trial court "should always allow a challenge for bias to such a juror, notwithstanding the fact that such juror declares under oath that he could fairly and impartially try the case, for opinions thus formed cannot so easily be brushed aside."

In the Rosencranz Case, supra, one of the jurors disclosed that he had a fixed opinion that the defendant was guilty, and thought that he could not lay it aside entirely. Another said that he knew the facts and had an opinion, and felt that he could lay his opinion aside. The court held that it was error to disallow challenges for actual bias.

The statute provides that all challenges for cause or favor shall be tried by the court. R. S. § 819, now 28 USCA § 424. In construing this provision, the United States courts, upon writ of error, have uniformly deferred to the decision of the trial court and have exercised their power to set aside its decision with hesitancy. In Reynolds v. United States, 98 U. S. 145, 156, 25 L. Ed. 244, Chief Justice Waite said: "The question thus presented is one of mixed law and fact, and to be tried, as far as the facts are concerned, like any other issue of that character, upon the evidence. The finding of the trial court upon that issue ought not to be set aside by a reviewing court, unless the error is manifest. No less stringent rules should be applied by the reviewing court in such a case than those which govern in the consideration of motions for new trial because the verdict is against the evidence. It must be made clearly to appear that upon the evidence the court ought to have found the juror had formed such an opinion that he could not in law be deemed impartial. The case must be one in which it is manifest the law left nothing to the 'conscience or discretion' of the court."

This rule has been followed with approval in Hopt v. Utah, 120 U. S. 430, 7 S. Ct. 614, 30 L. Ed. 708; in Spies v. Illinois, 123 U. S. 131, 8 S. Ct. 21, 31 L. Ed. 80; and in Holt v. United States, 218 U. S. 245, 31 S. Ct. 2, 54 L. Ed. 1021, 20 Ann. Cas. 1138.

Turning now to the testimony given by the jurors in the case at bar. It appears that Juror Corrigan had an opinion based upon hearsay. "I believe the defendant guilty of the crime charged," he said, "based on what I heard at the time it occurred. It would take considerable evidence to remove that opinion." "I now believe him guilty and to change my mind would require evidence." He further said that "his opinion was not a fixed one and that he could lay it aside if he heard evidence." "But I would have to have evidence."

Juror Laasen also had an opinion based upon hearsay. It was not a very strong opinion, but he would have to have evidence to change it. "The defendant would have to produce evidence before I could change the opinion I hold." "I could not, without evidence, presume him innocent." He concluded by saying that his opinion would yield to evidence.

Juror Oliver had a "fairly well fixed" opinion. "I heard a great deal of discussion about it by people, some of whom, I presume, knew the facts of the case." "I heard from various people at various times what purported to be the facts. I asked questions of those I thought might know of the circumstances. I accepted the opinion and knowledge of those who gave them without comment. I imagine I may have talked to Cliff Allyn, who was a witness, at some time or other, but I don't remember it. I talked to Charlie Kennedy, I recollect that distinctly. From my conversations and my questions, and the facts as I heard them, I formed an opinion. I believed those facts at the time. I still have no reason to doubt the good faith of the persons who gave them. That opinion is fairly well fixed. I try to be conservative in reaching conclusions. When I do form an

opinion, it is usually based on pretty strong evidence, and that is true in this case." "If called as a juror, I would try my best to be fair, just as far as I could. I have my doubts. I don't know if it would be proper for me to sit in this case. I have expressed my opinion several times on this case." "If I were the defendant, I would not be willing to have my case tried by twelve men of my conviction." And again he said, "I'm afraid I wouldn't be willing to be tried by a jury of my present frame of mind." In answer to a question asked by the trial judge, he said, "All I have heard has been statements from persons who are supposed to know what they are talking about, in the courtroom during the trial, and outside."

■ It may be that under the facts and the law we would be justified in holding that there was no abuse of discretion in disallowing the challenges to Jurors Corrigan and Laasen; but not so as to Juror Oliver. He had a "fairly well fixed opinion," based upon conversations he had with persons who had been present in the courtroom and witnesses at the former trial of the case, and knew the facts. Juror Oliver had formed a positive and decided opinion, and was therefore incompetent. Reynolds v. United States, supra, 98 U. S. at page 157, 25 L. Ed. 244. What was said by this court in the Dolan Case, supra, directly applies here. Quoting from the opinion: "Impressions received or opinions formed or expressed as to the guilt or innocence of a defendant accused of crime, based upon rumor, or from reading newspaper accounts, can, in most cases, be readily removed; and in such cases, where the jurors upon their voir dire testify that they could disregard any opinion that they had thus formed or expressed, and try the issue and the case impartially," they may be competent. "But, if such opinions have been formed or expressed upon the testimony of witnesses duly sworn in a court of justice bearing directly upon the issue to be tried, the trial court should always allow a challenge for bias to such a juror, notwithstanding the fact that such juror declares under oath that he could fairly and impartially try the case, for opinions thus formed cannot be easily brushed aside."

In the language of Chief Justice Marshall in United States v. Burr, Fed. Cas. No. 14,692g, "Such a person may believe that he will be regulated by testimony, but the law suspects him, and certainly not without reason. He will listen with more favor to that testimony which confirms, than to that which

would change his opinion; it is not to be expected that he will weigh evidence or argument as fairly as a man whose judgment is not made up in the case."

Appellant was compelled to and did use one of his peremptory challenges to excuse Juror Oliver. After appellant exhausted all his twenty peremptory challenges, another juror was drawn to complete the panel, whereupon, the record shows, the following proceedings were had:

"The defendant used twenty peremptory challenges and thereafter the jury not being completed, Emily Polet was drawn as a prospective juror and was duly sworn and examined on her voir dire. A challenge for cause to said Juror Emily Polet was made by defendant for actual and implied bias and was overruled by the court. Thereupon the defendant by his counsel stated that the defendant was not satisfied with the jury and requested the court to allow defendant an additional peremptory challenge and to allow defendant to stand aside said Emily Polet and draw another juror, there still being more in the box and in attendance in court. This request was refused by the court and an exception taken by defendant, and allowed by the court. Emily Polet was the last juror called and completed the panel of twelve jurors. The plaintiff used only four peremptory challenges.

"The jury were thereupon duly sworn to try the case. The testimony was then taken."

■ From what we have said, it follows that appellant was deprived of one of his peremptory challenges through an erroneous ruling of the trial judge, and therefore the judgment must be reversed.

Error was assigned upon the refusal of the trial court to instruct the jury before argument. We adhere to the ruling on this question heretofore made in Hauptman v. United States (C. C. A.) 43 F.(2d) 86.

■ Under the circumstances shown by the record, the court did not err in excusing the prospective juror, Mrs. Hermanson. From the evidence, the trial court was justified in concluding that the relation of attorney and client existed between counsel for defense and Mrs. Hermanson.

■ Appellant assigned as error the giving of instruction 29, which, he claimed, erroneously placed the burden of proof of self-defense upon him. While we think the instructions given, taken as a whole, correctly instructed as to the burden of proof of self-defense, upon a new trial care should be tak-

en not to use language in the instructions which might be construed as placing the burden of proof upon the defendant. The assignment as to instruction twenty-four, relative to murder in the first degree, is immaterial, as the jury found appellant guilty of murder in the second degree. We agree, however, with counsel for appellant in his criticism of the instruction, when he says that: "A defendant in a murder case should never be required to prove any fact, or negative any fact, beyond a reasonable doubt, in order to obtain an acquittal or suffer a conviction of a lower grade of the offense charged, instead of the higher."

The judgment is reversed, and the cause remanded for a new trial.