THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* MARCELINO MÉNDEZ LORENZO, Defendant and Appellant.

No. 15369. Argued April 1, 1953.—Decided May 15, 1953.

854

*Vicente Palés Matos* for appellant. *José Trías Monje, Secretary of Justice,* and *Rafael L. Ydrach Yordán, Assistant Fiscal of the Supreme Court,* for appellee.

Mr. Justice Ortiz delivered the opinion of the Court.

Marcelino Méndez Lorenzo, the appellant, was convicted by a jury in the former District Court of Puerto Rico, Ma-

yagüez Section, of murder in the second degree and of attempt to kill. We are considering both cases jointly in this appeal. In this brief the appellant merely challenges the instructions given to the jury by the judge who presided over the trial. His most important objections refer to the definition of the offenses of murder in the first and in the second degree, voluntary manslaughter and attempt to kill and to the judge's instructions as to the definition of *malice* and *malice aforethought* and as to the presumption of malice.

Both appeals have been taken in this case by means of a statement of facts duly verified and approved.

█ A case of slight intrinsic significance may at times afford an opportunity to clarify basic concepts of law. *Morisette* v. *United States*, 342 U. S. 246, 247. This is especially true as to the concepts of "murder," "malice aforethought" and "deliberation," regarding which some confusion still exists, particularly in instructions to the juries. 24 So. Calif. L. Rev. 288, April 1951 issue. Such instructions generally comply with the letter of the law, but it should be the duty of the judge to enable the jury to understand the true significance of technical concepts of law. *People* v. *Bender*, 27 Cal. 2d 164, 184, 185. The effectiveness of jury trials implies the convenience that the judge aid the jury regarding the law applicable to the facts of the case, in order that the jury should not be forced "to founder and flounder within the dark emptiness of legal jargon." (Dissenting opinion of Mr. Justice Frankfurter in *Fisher* v. *United States*, 328 U. S. 463, 487.) Instructions must not become "riddles wrapped in a mystery inside an enigma." (Winston Churchill, cited in 24 So. Calif. L. Rev. 301.) As pointed out by Mr. Justice Cardozo (Law and Literature, pp. 100, 101, cited in 37 Col. L. Rev. 709, footnote 28), "I have no objection to giving them this dispensing power [to verify the degrees of murder], but it should be given to them directly and not in a mystifying cloud of words. The present distinction [as to manslaughter] is so obscure that no jury hearing it for the

first time can fairly be expected to assimilate and understand it. I am not at all sure that I understand it myself after trying to apply if for many years and after diligent study of what has been written in the books."

A thorough understanding of the true significance of the elements of murder requires certain consideration of the historical development of those concepts.[1] Democratic and individualist states, considering the significant value of human life, have given the utmost importance to the offense of manslaughter. Under the original Roman Law criminality was imputed to intentional manslaughter only. Germanic tribes punished harshly all kinds of death-dealing actions, whether intentional or not, but during the Carolingian era not only was a difference established between death caused by negligence and wanton death, but by then malicious manslaughter was classified into degrees, according to the deliberation involved. In France this entire field of the law falls under the category "meurtre", which becomes "assassinat" if there has been premeditation. Section 406 of the Spanish Penal Code includes, among others, two qualifying circumstances of murder which have always prevailed in that country, willfullness and premeditation. Seix, *Nueva Enciclopedia Jurídica*, Vol. 3, p. 41.

In England, the Common Law, in its origin, established no distinction between deaths caused maliciously or negligently or accidentally. All were punishable, except those caused by public officers in compliance with the laws. Self defense and insanity were no defense. This stern attitude was subsequently mitigated on the ground that those who

---

[1] The basic sources of information we have used may be found in the articles in 9 So. Calif. L. Rev. 112: "What is Second Degree Murder in California"; 43 Yale L. J. 537: "A Re-examination of Malice Aforethought"; 37 Col. L. Rev. 701: "A Rationale of the Law of Homicide"; 97 Pa. L. Rev. 759: "History of the Pennsylvania Statute Creating Degrees of Murder." As to the origin of the offense of murder in England, concerning the contribution of the Danes and the Normans, see "Lex Murdrorum," in 36 Harv. L. Rev. 146.

enjoyed "the benefit of clergy," who could read or write were not responsible for murder. However, from 1496 and thereafter certain statutes were enacted to the effect that any person having killed with malice prepensed could not avail himself of the "benefit of clergy," the standard prevailing in the Continent being thus adopted. Murder then began to be defined as the act of killing with malice aforethought.[2]

In order to escape partly the severity of the death penalty imposed in murder cases, the system of classifying murder into degrees began to be adopted in the United States. Pennsylvania was the first state to introduce that innovation, in 1794. Based on an Act approved in 1682, under the regime of William Penn, the new statute provided that any murder perpetrated by means of poison, lying in wait or any other kind of willful, deliberate or premeditated killing, or committed in the perpetration or attempt to perpetrate arson, rape, robbery or burglary, constitutes murder in the first degree, the rest being murder in the second degree.

The first Legislature of California merely reenacted the Common Law provision to the effect that murder is the killing of another person with malice aforethought. But in 1856 the language of the statute of Pennsylvania, regarding the classification into degrees, was incorporated to the Penal Code of California. We have adopted in Puerto Rico, almost literally, the corresponding provision from the Penal Code of California, in § 201 of our Penal Code, likewise incorporating the requirement and the definition of malice aforethought in §§ 199 and 200 of the same Code.

---

[2] Modern European writers plead for the elimination of the requirement of premeditation, pursuant to the theory that those who kill due to emotional impulses are socially more dangerous and frequent than those who kill after a previous meditation. 3 Seix *Nueva Enciclopedia Jurídica* 44. But legislation remains contrary to that postulate. Only in Switzerland and in Brazil has the element of premeditation been eliminated. In Switzerland the Penal Code of 1937 provides that "any agent acting under circumstances or considerations manifesting his low intention or dangerousness, commits murder." (Translation ours.)

Statutes and decisions have developed the concept of "malice" by creating a category of a legal nature with a content different from the popular and common meaning of that term. For example, malice in its legal sense does not refer exclusively to hatred, ill will or revenge. *Pembrook v. State*, 222 N. W. 956, 957. So called merciful deaths do not fail to constitute murders technically because of the fact that they are inspired in humanitarian feelings. 43 Yale L. J. 537; *People v. Roberts*, 178 N. W. 690. Nor is malice synonymous, exclusively, with the intent to kill. The desire and the immediate purpose, that is, the intent to kill, is an actual ingredient of the offense of voluntary manslaughter, despite the absence of malice, although such desire and purpose may have been instantaneously produced in the heat of a considerable provocation. In *People v. Dumas*, 14 P.R.R. 384, 389, 390, the following is pointed out:

"The difference between the two crimes consists in that the killing in the crime of murder is effected with malice aforethought—that is to say, with malice and premeditation—and in the crime of manslaughter, without malice. The difference does not consist in premeditated intent in murder, and the lack of such intent in manslaughter. The terms malice and intent are entirely different. A crime may be committed without malice, but never without intent. If there was no intent, one of the integral and essential elements of every crime would be absent, because where there is no intent there can be no offense. . . . (citing from *People v. Bartlett*, 48 Cal. 437):

" 'Whether the homicide amounts to murder or manslaughter merely, does not depend upon the presence or absence of the intent to kill. In either case there may be a present intention to kill at the moment of the commission of the act. But when the mortal blow is struck in the heat of passion, excited by a quarrel, sudden, and of suffiicient violence to amount to adequate provocation, the law, out of forbearance for the weakness of human nature, will disregard the actual intent and will reduce the offense to manslaughter. In such case, although the intent to kill exists, it is not that . . . malicious intent which is an essential element in the crime of murder.' "

The Supreme Court of California has recently ratified that same view. *People* v. *Valentine*, 28 Cal. 2d 121, 130; *People* v. *Thomas*, 25 Cal. 2d 880.

Section 559, subdivision 4, of our Penal Code defines the term malice as denoting "the doing of a wrongful act, intentionally, without just cause or excuse, a conscious [3] violation of the law to the prejudice of another."

The foregoing definition is statutory and may, therefore, be correctly incorporated in an instruction. But from the point of view of giving clear instructions, that definition is not analytically complete. We have seen that voluntary manslaughter is also characterized by the intent and corresponds, moreover, to a conscious violation of law. The fact that it is instantaneously impulsive does not mean that the person committing it quits knowing what he is doing. So that what characterizes malice, under the definition of § 559, is the execution of the act without just cause or excuse. Such definition does not particularize completely the psychic and mental element accompanying malice, as hereinafter noted.

Under § 199 of the Penal Code, murder is the unlawful killing of a human being with malice aforethought. In accordance with § 200 such malice aforethought may be express or implied, it being express when there is manifested a deliberate intention or purpose to take away the life of a fellow creature, and implied "when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart."

We confront here appellant's first important objection to the instructions given in the case at bar. He challenges the action of the court *a quo* in defining malice in accordance with the terms of § 559 ("without just cause or excuse, etc.") and at the same time in defining it in accordance with §§ 199 and 200, above mentioned, that is, because it

---

[3] The Spanish text uses the term *"esciente"* which means conscious of what he is doing.

interpolated in the instructions a general definition of malice together with the specific definition of malice aforethought. Now, according to dictionaries, to premeditate implies to ponder on an act before executing it, one's intent, after thinking of it beforehand, to perpetrate an offense, taking previous dispositions in connection therewith. As a matter of fact, the existence of a mental state characterized by malice entails the development of a previous process of formulating a thought. That is, malice in itself is inherently premeditated. Moreover, premeditation may take place an instant prior to the act, and premeditation may exist regardless of how rapidly the act is executed. For these reasons courts have held valid an instruction including both definitions, that of malice under provisions analogous to § 559 and that of malice aforethought under provisions analogous to §§ 199 and 200, since there is no essential difference between both concepts. *Turner* v. *Commonwealth*, 180 S. W. 768, 769; *People* v. *Chávez*, (1951), 37 Cal. 2d 656, 666; *People* v. *Harris*, 169 Cal. 53, 65; *People* v. *Dice*, 120 Cal. 189. This disposes of that objection of the appellant.

■ The concept of malice aforethought implies the absence of just cause or excuse in taking life and implies in addition the existence of the intent to kill a fellow creature. That intent may be manifested through one of the two following elements, either of which is sufficient to determine the existence of malice aforethought, to wit, (*a*) the specific intent to kill, considered as equivalent to the desire and direct, explicit and defined purpose to kill, that is, formulated precisely with the direct objective to kill, (*People* v. *Thomas*, 156 P. 2d 7, 17), or, (*b*) the intention to do an act or inflict great bodily injury whose probable consequence is the death of a person. 43 Yale L. J. 537, 557.[4] This view refers to

---

[4] Mr. Justice Holmes has been the foremost leader of this doctrine, which adopts objective and external standards to define malice aforethought. 37 Col. L. Rev. 710, 711. To him "malice in murder means knowledge of such circumstances that according to common experience there is a plain and strong likelihood that death will follow the contem-

the dangerousness involved in the action of a defendant, in the sense of the creation of a substantial death risk.

■ Section 201 of our Penal Code provides the following:

"All murder which is perpetrated by means of poison, lying in wait, torture, or by any other kind of wilful, deliberate and premeditated killing, or which is committed in the perpetration or attempt to perpetrate arson, rape, robbery, burglary or mayhem, is murder of the first degree, and all other kinds of murders are of the second degree."

In his instructions in the case at bar the judge stated as follows:

"The law divides the offense of murder into two degrees: first and second. Any murder perpetrated by means of poison, lying in wait or torture, and any willful, deliberate and premeditated killing, or committed in the perpetration or attempt to perpetrate arson, rape, robbery, burglary or mayhem, is murder in the first degree. And the unlawful killing of a human being with malice, but without deliberation, is murder in the second

---

plated act." *Commonwealth* v. *Chance*, 174 Mass. 245, 54 N. E. 551. In his work *"The Common Law,"* as cited in *Turner* v. *Commonwealth, supra,* p. 770, he states: ". . . knowledge that the act will probably cause death —that is, foresight of the consequences of the act—is enough in murder . . ." He indicates that if the probability is a matter of common knowledge, one who does the act is guilty of murder "and the law will not inquire whether he did actually foresee the consequences or not. The test of foresight is not what this very criminal foresaw, but what a man of reasonable prudence would have foreseen."

For example, if someone shoots at the legs of a fellow creature, who dies as the result of such leg wounds, if the death was, objectively, a probable result of such wounds, the author is charged with malice aforethought, that is, the commission of murder, although the author allege that his subjective intent was not to kill and although he allege that he was not personally conscious that death was not a probable result of the wounds. Whether death was or was not a probable result of wounds is a question to be determined by the jury. Another example of this objective view is found in the statutory definition of murder in the first degree, upon it being said, in part, that any murder committed in the perpetration of arson, rape, robbery, burglary or mayhem is murder in the first degree. Of course, the death of another is a very probable result of arson or mayhem in themselves. The statute presupposes the existence of malice aforethought and the defendant cannot allege that subjectively he did not have the intent to kill. 43 Yale L. J. 558, 559.

degree; it is enough that the death ensues without considerable provocation or the attendant circumstances evidence an abandoned and malignant heart.

"In murder in the first degree the evidence must show a premeditated and deliberate intent to take life. And the absence of some intent to kill at the moment death is caused, reduces the offense of murder in the first degree to murder in the second degree.

"The term voluntarily used in our laws implies the purpose to kill; therefore, death is considered voluntarily caused when there is a specific intent to take life. No period of time need elapse between the death and the purpose or design to kill. It is only necessary that the killing be preceded by the occurrence of the willful deliberation and premeditation of the agent of the offense, regardless of the speed between the thought and killing.

"The term 'premeditation' means that the act was preconceived and done after thinking it well.

"Deliberation means a state of serenity or cold-bloodness. It does not mean to calculate or think during a long time, but an intent or purpose to kill on the part of the defendant, calmly, as a consequence of the deliberate purpose to satisfy a passion or revenge, or to do any other unlawful act. It is enough if the design to kill existed when the fatal wound was inflicted.

"Premeditation and deliberation depend on the circumstances of the case, and the fact of aiming and firing a weapon at a person and killing him is enough to consider that premeditation and deliberation existed, despite the speed with which the act was done.

"The elements of deliberation and premeditation may be deduced from the manner a lethal weapon is used or perhaps from the mere use thereof.

"Any murder perpetrated by means of poison, lying in wait or torture, and any kind of willful, deliberate and premeditated death, or committed in the perpetration or attempt to perpetrate arson, rape, burglary or mayhem is murder in the first degree; all other kinds of murder are in the second degree.

"Pursuant to §§ 199, 200 and 201 of the Penal Code, deliberation need not exist in the offense of murder in the second degree, it being enough that the death results without considerable provocation or that the attendant circumstances show an abandoned and malignant heart.

"The distinction between the two degrees of the offense is that murder in the first degree must be willful, deliberate and premeditated, whereas in murder in the second degree the killing is not deliberate; it is an unlawful killing with malice, but without deliberation."

The appellant alleges that such instructions are erroneous, in the first place, because they informed the jury that the specific intent to kill is an integral element of the offense of murder in the first degree. The verdict returned in this case was of murder in the second degree. Had there been any error as to the definition of murder in the first degree, that error was not prejudicial, and was corrected by the very fact that the verdict was of guilty of a lesser degree. 41 C.J.S. 295; *Frank* v. *United States*, 59 F. 2d 670. If a defendant is convicted of a lesser degree, appellate courts cannot consider questions regarding a higher degree. 41 C.J.S. 299. At any rate, in order to clarify concepts, it is true that in a series of recent cases the Supreme Court of California, on the basis of a statute almost identical with ours, has set aside the rule formerly laid down by that same court and has established the new doctrine that the specific intent to kill is not an integral element of the offense of murder in the first degree, the only and exclusive difference or distinction between both degrees being the fact that in murder in the first degree there has been deliberation, unlike in murder in the second degree. *People* v. *Holt*, 25 Cal. 2d 59; *People* v. *Thomas, supra; People* v. *Bender, supra; People* v. *Valentine, supra; People* v. *Martínez*, (1952) 38 Cal. 2d 556, 560. In those cases it was considered that the lower court had committed an error in charging that murder in the first degree was characterized by the specific intent to kill, although in some of them (*People* v. *Holt, supra*) the judgment was not reversed and the judgment was reduced to murder in the second degree, on the ground that it was justified by the evidence. In the case at bar we have thoroughly examined the statement of the case and the evidence

for the prosecution, believed by the jury, as hereinafter noted, not only brought about a verdict of murder in the second degree but it could have also justified a verdict of murder in the first degree, since both the element of deliberation and of the specific intent to kill arose from said evidence presented by the People. Anyhow, the doctrine laid down by the Supreme Court of California in those cases is, in our judgment, erroneous. Said doctrine is based on an alleged difference between the concepts "deliberation" and "specific intent." But the aforesaid § 201 provides that any other kind of wilful, deliberate and premeditated killing is murder. Pursuant to § 559, the word "wilfully" when applied to the intent with which an act (to kill) is done, implies a purpose or willingness to commit the act, that is, to kill, as to murder in the first degree. Considering that term in connection with a deliberate killing, it implies the element of a specific intent to kill, deliberately. To deliberate on the purpose to kill presupposes the specific intent to kill; and not to cause injuries in general, although a probable consequence of such injuries be death. Malice, in its objective aspect of probable result, as we have already discussed, is different from its aspect of the deliberate purpose to kill. In speaking of express malice § 200 refers to the "deliberate intention to take away the life of a fellow creature," that is, to the specific intent to kill. In brief, as to the aspect under discussion, murder in the first degree includes the elements of deliberation and specific intent to kill. In the case of murder in the second degree, malice aforethought, without the specific deliberate intent to kill is enough, that is, without the intent to do an act resulting in death, but in virtue of the purpose to cause bodily injuries which may probably cause death, and actually cause death, without the person causing such injuries having the direct, specific and deliberate purpose to kill. The decisions of this Court have determined that murder in the first degree is characterized by the deliberation and specific intent to kill, unlike murder in the second degree. *The*

*People* v. *Lasalle*, 18 P.R.R. 410, 412; *People* v. *Carrión*, 35 P.R.R. 828; *People* v. *Garcés*, 29 P.R.R. 961; *People* v. *Torres*, 34 P.R.R. 626; *The People* v. *Crespo*, 21 P.R.R. 285; *People* v. *Belardo*, 50 P.R.R. 491; *People* v. *Rosario*, 67 P.R.R. 346.[5]

Appellant assigns as an error the action of the judge of the lower court in charging on the presumption of malice. As we have seen, the jury was informed that when the death of a person is evident and there is no circumstance in the evidence tending to mitigate, excuse or justify the act executed by the person accused, implied malice is then presumed. The jury was also told that when the circumstances point out to the death of a human being at the hands of another, malice is presumed. This latter instruction must be considered together with the former, that is, that presumption arises when there are no circumstances of mitigation, excuse or justification in the evidence. The instruction given complies with the law and statutory provisions prevailing in this jurisdiction. Section 12 of our Penal Code provides as follows:

---

[5] Although not relevant in this case in view of the verdict returned, we should point out the convenience that the jury be given an adequate explanation of the concept of deliberation, as indicated in the recent California cases above cited. The omission of such explanation does not necessarily imply the commission of a reversible error, especially when the defense does not ask for the instruction. But bearing in mind that it is correct to tell the jury that deliberation may take place rapidly, and that it need not take place within a determined period of time prior to the act, it would be convenient that the jury be informed of the integral elements of deliberation, so that the jury be in an adequate position to decide whether or not deliberation existed. *People* v. *Bender*, 27 Cal. 2d 164, 183, 185, points out that the adjective "deliberate" means "formed, arrived at, or determined upon as a result of careful thought and weighing of considerations; as a *deliberate* judgment or plan; carried on coolly and steadily, esp. according to a preconceived design; . . . Given to weighing facts and arguments with a view to a choice or decision; careful in considering the consequences of a step; . . . unhurried; . . . Characterized by reflection; dispassionate; not rash." Actually, the synthetic applicable definition must be that found in dictionaries, that is, to deliberate consists to consider carefully and thoroughly the reasons for and against, that is, the reasons of our decision or choice, before complying with or performing it. Whether defendant has deliberated as above stated is a question to be determined by the jury.

"Section 12.—Intent, how manifested. The intent or intention is manifested by the circumstances connected with the offense and the sound mind and discretion of the accused. All persons are of sound mind who are neither idiots, nor lunatics nor affected with insanity. A malicious and guilty intention is presumed from the manner and deliberation with which an unlawful act is intended or committed for the purpose of injuring another."

Section 247 of our Code of Criminal Procedure provides the following:

"Section 247.—Upon trial for murder, what must be proved. —Upon a trial for murder the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter or that the defendant was justifiable or excusable."

This Court has held that malice is presumed, in accordance with the Sections above copied. *People* v. *Cruz*, 49 P.R.R. 637; *People* v. *Torres*, *supra*. From an analytical viewpoint, it is true that all the elements of the offense of murder must be proved by the prosecution beyond a reasonable doubt, and that malice should likewise be proved beyond a reasonable doubt. On the other hand, the prosecution must not bear the burden and the obligation, almost impossible to comply with, to establish by means of direct evidence a subjective mental state such as malice. This mental state may be inferred from defendant's acts, upon considering that every defendant intends the probable consequences of his own acts. One is compelled to resort to the method of inferences to show the existence of malice, although said inferences may be overcome if the evidence discloses any circumstance of mitigation, excuse or justification as provided by the aforesaid § 247 of the Code of Criminal Procedure.

In the recent case of *Morisette* v. *United States*, *supra*, we find an erudite opinion of Mr. Justice Jackson regarding the

historical origin, the importance and the need of proving the element of criminal intent. A judgment of a lower court was reversed in view of its instructions on the presumption of intent. It was indicated that where the intent of the accused is an ingredient of the crime charged, its existence is a question of fact which must be submitted to the jury. He stated the following:

"We think presumptive intent has no place in this case. A conclusive presumption which testimony could not overthrow would effectively eliminate intent as an ingredient of the offense. A presumption which would permit but not require the jury to assume intent from an isolated fact would prejudge a conclusion which the jury should reach of its own volition. A presumption which would permit the jury to make an assumption which all the evidence considered together does not logically establish would give to a proven fact an artificial and fictional effect. In either case, this presumption would conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime. Such incriminating presumptions are not to be improvised by the judiciary."

It is apparent from the foregoing opinion that instructions to juries on the presumption of malice must be clear. We have seen that the instruction in this case was correct, in accordance with the statutes in force in Puerto Rico. Although the failure to do so is not a reversible error, the jury must be informed that despite the presumption, the existence of malice is a question of fact to be decided exclusively by the jury and that if the very evidence presented by the prosecution or the entire evidence discloses circumstances of mitigation, excuse or justification, or if there is evidence of absence of criminal intent, the presumption must be rejected and, in any case, the jury is entitled to arrive at its own conclusions as to whether or not there was malice.

In *People* v. *Cruz*, 42 P.R.R. 879, a judgment of murder in the second degree was reversed because the instructions did not adequately make clear to the jury that if there was

any reasonable doubt upon the question of malice, they should not find the defendant guilty of murder in the second degree. The opinion recites:

"We can not believe that if the jury had been so instructed they would have found defendant guilty of murder in the second degree. In any event, we are constrained to agree with appellant that the evidence as a whole can not be said to sustain such a verdict. It may justify a strong suspicion that Severiano Cruz acted out of resentment because of the rebuke administered or the unsought advice given by his uncle. It does not establish the element of malice beyond a reasonable doubt and defendant should have been given the benefit of that doubt."

In the case at bar there was no specific instruction as to a reasonable doubt regarding the element of malice. It would have been preferable if the instruction of presumption of malice had been followed by the instruction of a reasonable doubt as to malice. But the error, if any, was not prejudicial. The judge charged the jury regarding the elements of the offense of murder, including malice, and of the offense of voluntary manslaughter, and they were informed that the latter offense implied the absence of malice. They were charged, substantially, that should there be any reasonable doubt as to whether the offense committed was of murder or of voluntary manslaughter, the jury should give the defendant the benefit of the doubt and convict him of the lesser offense, if it convicted him of any offense. Moreover, the evidence presented justified the verdict returned. Let us see.

The evidence of the People was to the effect that the sons of the defendant Marcelino Méndez and the sons of Juan Miranda had quarreled; that on the following day, Sunday morning, the defendant had said: "Either I kill today, or I'm killed"; that the defendant had that afternoon heaved a car at Juan Miranda's son, the latter having to throw himself to the gutter; that that night the defendant and his sons passed several times in a car by Juan Miranda's house and the defendant finally stopped the car in front of

the house of Juan Miranda; that one of the sons of the defendant alighted from the car with a machete; that Juan Miranda went towards the car of the defendant and asked him: "What's between you and my sons? That's kinds' stuff," and that then one of defendant's son darted out of the car with a machete; that the defendant then alighted from the car and fired several shots, killing Juan Miranda and seriously wounding one of his sons.

The evidence of the defense was to the effect that when the defendant passed in his car by Juan Miranda's house, the latter ordered him to stop the car, struck the defendant and while the sons of both fought, Juan Miranda drew out a revolver and then the defendant drew out his revolver and fired in self-defense.

The evidence presented by the prosecution was believed by the jury. We do not think that the failure to instruct the jury directly and specifically as to a reasonable doubt regarding malice was prejudicial to the defendant, in view of the evidence that was presented and which we have summarized.

 The judge said in his instructions that the fact of aiming and firing a weapon at a person and killing him is sufficient to reveal premeditation and deliberation. Such instruction coincides with the indications of this Court in several cases. *People* v. *Alegría*, 36 P.R.R. 355; *Rodríguez* v. *Lugo*, 36 P.R.R. 504; *The People* v. *Ortiz et al.*, 18 P.R.R. 803; *People* v. *Carrión, supra; People* v. *Román*, 70 P.R.R. 48.

Now, malice may be inferred from the use of a weapon, since such use may reasonably imply an intent to kill or to cause injuries whose probable consequence is death. However, deliberation is a special mental state, a specific category within the general field of criminal intent, with defined contours, and is equivalent, as we have seen, to a state of relative calmness in which the actor considers and selects different factors and reasons as to the nature of the act and its

consequences. The act of shooting with a weapon may be deliberate, but it may also be impulsive or impetuous. For that reason it is incorrect to say, absolutely and without any qualification whatsoever, that the firing of a weapon is enough to prove deliberation, if it is intended to mean that deliberation is automatically and absolutely synonymous with the act itself of firing a weapon, and it is meant that deliberation is an integral element of the fact of firing such weapon. Deliberation, as a subjective mental state not susceptible of direct evidence, may be inferred by the jury from the act of firing a weapon. *People* v. *Rosario, supra.* As to other points, the cases above cited are correct. But it should be made clear to the jury that the act of firing a weapon is not definitively conclusive as to the presence of deliberation, and it should be indicated in the instructions that the presence or absence of deliberation is a question of fact to be determined by the jury. Therefore, the court *a quo* did not give an altogether clear instruction as to the point now under discussion. But considering that deliberation characterizes murder in the first degree and the verdict returned was of murder in the second degree, the fact that the instruction was not complete was not prejudicial. Furthermore, as a matter of fact, the evidence tended to show deliberation on defendant's part.

As an annotation to this opinion, we should end where we began, that is, the need of giving clear instructions. We are aware that the discussion we have developed in this opinion does not foreclose the possibility of giving instructions which may still be "mistifying clouds of words." The haziness will persist. But this is due to the too general definitions still retained in our Penal Code. This opinion should not be interpreted as if we advocate the adoption of a certain specific solution, but we do say that there is an unequivocal modern tendency to correct the defects in Penal Codes in different jurisdictions. The aim should be to give clearer definitions

of offenses and to give due regard, in considering the contents of the offenses as well as in fixing the penalties, to the progress of science and of modern psychology insofar as they deal with the manner in which offenders should be treated and penalized and the manner of classifying the offenses in accordance with the prevailing realities in each particular atmosphere. See to that effect Professor Wechler's article in 65 Harv. L. Rev. 1097, May 1952 issue: *"The Challenge of a Modern Penal Code."* See also 62 Harv. L. Rev. 616: *"The Case of the Speluncean Explorers."*

As an illustration of the recent steps taken to modernize penal laws, in 1942 a new Penal Code was approved in the State of Louisiana. Without meaning to suggest that we should adopt in our jurisdiction the specific phraseology employed in the Louisiana Code, but rather as a question of great general interest, let us see how murder and voluntary and involuntary manslaughter have been defined in the State of Louisiana. The difference between murder in the first degree and in the second degree is eliminated and it is determined that murder is the act of killing a human being, "(1) when the offender has a specific intent to kill or to inflict great bodily harm; or (2) when the offender is engaged in the perpetration or attempted perpetration of aggravated arson, burglary in the nighttime, burglary in the daytime, aggravated kidnapping, aggravated rape, armed robbery, or simple robbery, even though he has no intent to kill." Section 740–30, Dart, Louisiana Code of Criminal Law and Procedure, (1943).

It should be noted that the traditional requisite of malice aforethought, express or implied, is not included, since "rather than use this vague and purely fictional phrase, relying upon past decisions for its interpretation, the Reporters have enumerated the situations where the homicide is to be considered as murder." Dart, *op. cit.*, p. 458.

872

Manslaugther is defined as follows in § 740–31:

"Manslaughter is:

"(1) A homicide which would be murder under subdivision (1) of Article 30 (murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; or

"(2) A homicide committed, without any intent to cause death or great bodily harm,

"(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30, or of any intentional misdemeanor directly affecting the person; or

"(b) When the offender is resisting lawful arrest by means, or in a manner, not inherently dangerous, and the circumstances are such that the killing would not be murder under subdivision (1) of Article 30."

Negligent manslaughter is defined as follows in § 740–32:

"Negligent homicide is the killing of a human being by criminal negligence.

"The violation of a statute or ordinance shall be considered only as presumptive evidence of such negligence."

The judgment appealed from will be affirmed.

